# EXHIBIT A

## (DeLoach Complaint)

FILED
 2016 Dec-15 PM 04:03
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PHYSIOTHERAPY ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| JAMES DOUG DELOACH, ) | |
| ) | |
| Defendant. ) | |

## VERIFIED COMPLAINT

Plaintiff Physiotherapy Associates, Inc. ("Physiotherapy" or "Plaintiff") brings the following for its Verified Complaint for a preliminary and permanent injunction and damages against defendant James Doug DeLoach:

### The Parties, Jurisdiction and Venue

1. Physiotherapy is a corporation organized under the laws of the State of Michigan with its principal place of business in the Commonwealth of Pennsylvania. Physiotherapy is an outpatient rehabilitation services company, providing a wide range of services including, general orthopedics, spinal care, neurological rehabilitation, and physical, occupational, and speech therapy. Physiotherapy also provides athletic training services. Physiotherapy operates through numerous locations in Alabama, including multiple locations in this district.

2. Defendant James Doug DeLoach ("DeLoach") is an individual resident of Talladega County, Alabama, whose residence address is 1688 Kahatchee Loop, Childersburg, Alabama. Until October 18, 2016, DeLoach was an employee of Physiotherapy, serving as an area vice president and, thereafter, a regional director. During DeLoach's employment with

Physiotherapy he serviced accounts located within, and performed duties for Physiotherapy within, the Eastern Division of the Northern District of Alabama.

3. This Court has jurisdiction over DeLoach because he resides in Talladega County, Alabama and worked for Physiotherapy in Alabama. Personal jurisdiction is further proper because DeLoach's acts as further described herein, have had, and threaten to continue to have, adverse impact on Physiotherapy in Alabama.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Accounts for which DeLoach was responsible while employed with Physiotherapy generated more than $10.7 million annually, and DeLoach's actions described below, if permitted to continue, subjects Physiotherapy to the loss of such accounts.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that the defendant resides in this district; a substantial portion of the events giving rise to Physiotherapy's claim occurred in this district; and the defendant is subject to the personal jurisdiction of the Court in this district.

**Statement of Facts**

6. DeLoach served as an employee of Physiotherapy from February 18, 2013 until his voluntary departure on October 18, 2016.

7. DeLoach's original position with Physiotherapy was an area vice president for the Alabama region, and he eventually became a regional director. In these positions, DeLoach had primary oversight for occupational and physical therapy operations for all of Physiotherapy's locations within the region. He was responsible for networking with and developing and maintaining relationships with referring physicians, physician groups, customers and referral

sources. Physiotherapy's primary referral sources are physicians and physician groups. DeLoach was also responsible for sports medicine outreach with colleges, universities and secondary schools within his region. In that position he was exposed to and developed, on behalf of Physiotherapy, important business relationships with personnel (including athletic directors, coaches, and physicians) at the said universities and schools. Physiotherapy would, as a result, receive referrals for physical therapy and other services, including athletic training, for the athletes of such universities and schools. Physiotherapy's competitors compete with Physiotherapy for referrals and relationships with physicians, physician groups, universities and schools, which was one of the principal areas of DeLoach's responsibility for Physiotherapy.

8. Physiotherapy's customers include the individuals to whom Physiotherapy is providing services, the physician groups whose outpatient rehabilitation practices Physiotherapy manages, and the universities and schools with whom it contracts to provide athletic training services. Physiotherapy relies on physicians and physician groups as its referral sources to further develop its business and increase its customer base.

9. On or about March 4, 2013, DeLoach voluntarily executed an agreement with Physiotherapy (hereafter, "Agreement"), which provided terms for his employment and contained certain post-employment competitive restrictions. A copy of the Agreement is appended hereto as Exhibit A and is incorporated herein by reference.

10. In the Agreement, DeLoach agreed, *inter alia*, that during the term of his employment and for a period of twelve (12) months following termination for any reason, he would not:

    a. directly or indirectly be employed by or perform services for any business which performs outpatient rehabilitation services in any area within a ten mile radius of any of

Physiotherapy's (or any of its affiliates') facilities at which DeLoach provided services during his employment, or for which DeLoach had management or supervisory responsibility while employed (Ex. A, ¶ 1);

b. solicit, induce, or attempt to induce any past or current customer or vendor of Physiotherapy to cease doing business with Physiotherapy or to do business with any other business which performs services materially similar to or competitive with those of Physiotherapy (*Id.* at ¶ 2); and

c. induce or attempt to induce any associate of Physiotherapy to leave his or her employment with the company, or employ anyone who was an associate of the company at any time within the last six months of DeLoach's employment with Physiotherapy (*Id.* at ¶ 3).

11. In the Agreement, DeLoach also acknowledged and agreed that these competitive restrictions were necessary to protect the legitimate business interests of the company; and that the said restrictions were reasonable in all respects. (*Id.* at ¶ 4). He also agreed that the competitive restrictions would be tolled on a day-to-day basis for each day during which the periods were violated in any respect. (*Id.*).

12. DeLoach also acknowledged and agreed that the injury Physiotherapy would suffer in the event of a breach or threatened breach would cause Physiotherapy irreparable injury, and would entitle the company to (without limitation) equitable relief by injunction, without the posting of bond, by a court of competent jurisdiction. (*Id.* at ¶ 4).

13. DeLoach voluntarily resigned his employment with Physiotherapy, with his last day being October 18, 2016.

14. Physiotherapy has recently learned that DeLoach has accepted employment with ATI, a direct competitor of Physiotherapy. On information and belief, DeLoach is the Regional Director of ATI Physical Therapy Birmingham, Alabama area.

15. DeLoach's position with ATI, on information and belief, involves the same physician networking and sports medicine outreach functions that he performed for Physiotherapy.

16. DeLoach, since becoming employed by ATI, has called on or made solicitations to many of the same entities with whom Physiotherapy had or has referral relationships that DeLoach managed, including Jacksonville State University, a physician group, and multiple area high schools.

17. It is inevitable that DeLoach has and will compete against Physiotherapy, including using those business contacts that he maintained and nurtured during his employment with Physiotherapy and at Physiotherapy's expense to solicit business for ATI and to convince those referral sources of Physiotherapy to terminate or limit their business with Physiotherapy. DeLoach is valuable to ATI because of his business and referral relationships developed through Physiotherapy and because he has knowledge of Physiotherapy's referral contacts and relationships that would only be known to an employee of Physiotherapy within the Alabama region. DeLoach's knowledge, derived at Physiotherapy's expense, has or will enable him to solicit and divert Physiotherapy's referral sources to the detriment of Physiotherapy and in violation of the Agreement.

18. Upon information and belief, DeLoach's activities on behalf of ATI are being conducted within a ten mile radius of locations in which Physiotherapy maintains facilities, including at the St. Vincent's campus and the Greystone campus in Birmingham, Alabama, and its Oxford and Anniston, Alabama locations. DeLoach's competitive activities are thus prohibited by

the Agreement. Additionally, DeLoach has solicited or attempted to do business with Physiotherapy's referral sources, in violation of the non-solicitation provisions of the Agreement. DeLoach has appropriated for ATI a business relationship with Jacksonville State University that he had developed for Physiotherapy.

19. DeLoach's breach of the Agreement and the potential loss of business as a direct result of such breach has and/or will result in significant financial losses to Physiotherapy. Physiotherapy is threatened with the loss of additional revenues if DeLoach's breach of the Agreement continues. DeLoach's employment with ATI in the market area he formerly oversaw for Physiotherapy will also inevitably lead to loss of goodwill and ATI gaining knowledge of confidential company information regarding Physiotherapy and, among other things, its referral sources.

## COUNT I

### (Injunctive Relief: Preliminary and Permanent Injunction)

20. Plaintiff realleges each of the foregoing paragraphs as if set forth in full herein.

21. DeLoach has contacted and solicited Physiotherapy clients and referral sources in direct breach of the Agreement. DeLoach is also competing with Physiotherapy within the prohibited market area, in direct breach of the Agreement.

22. Physiotherapy has suffered injury and damage, and there is a substantial likelihood that it will continue to suffer substantial injury and damage by the conduct of DeLoach during the pendency of the lawsuit if DeLoach is not restrained from violating the Agreement.

23. Physiotherapy has lost, and will continue during the pendency of this lawsuit to lose revenues and profits to which it is entitled if this Court does not immediately restrain defendant from further violating the Agreement.

24. Physiotherapy has suffered, and will continue during the pendency of this lawsuit to suffer damage to its good will and likely business expectancies if this Court does not immediately restrain defendant from further violating the Agreement.

25. There is a substantial likelihood that Physiotherapy will prevail on the merits of its claims since the Agreement with defendant DeLoach, including its non-solicitation provisions, is valid and enforceable.

26. Immediate, substantial and irreparable harm will result to Physiotherapy in that, among other things, it is unable to protect its goodwill and maintain its referral sources unless the Court enjoins DeLoach from violating the competitive restrictions in the Agreement.

27. DeLoach has no adequate legal remedy under the circumstances. Enforcement of the post-termination provisions in the Agreement against defendant is the only manner to protect Physiotherapy's interests fairly and adequately.

28. The public interest will only be served by the issuance of preliminary and permanent injunctions. Without the injunctions, DeLoach will continue to injure the ongoing business and goodwill of Physiotherapy.

29. Preliminary and permanent injunctive relief is therefore appropriate.

THEREFORE, Plaintiff prays that this Court will enter judgment against DeLoach and award the following relief:

A. A preliminary injunction prohibiting DeLoach from breaching or further breaching his Agreement;

B. A permanent injunction prohibiting DeLoach from breaching or further breaching his Agreement;

C. Costs and attorneys' fees; and

D.  Such additional relief as this Court deems just and equitable.

## COUNT II

### (Breach of Contract)

30. Plaintiff realleges each of the foregoing paragraphs as if set forth in full herein.

31. DeLoach has breached and will continue to breach his Agreement with Physiotherapy by, among other things, competing against Physiotherapy within the prohibited area, and by contacting, soliciting, making proposals to, providing service to, or conducting business with Physiotherapy's referral sources. DeLoach has or will use information and contacts he gained while employed by Physiotherapy to further these ends.

THEREFORE, Plaintiff prays that this Court will enter judgment against DeLoach and award the following relief:

A.  Compensatory damages in such an amount as the trier of fact determines;

B.  A preliminary injunction prohibiting DeLoach from breaching or further breaching his Agreement;

C.  A permanent injunction prohibiting DeLoach from breaching or further breaching his Agreement;

D.  Costs and attorneys' fees; and

E.  Such additional relief as this Court deems just and equitable.

/s/ John E. Goodman
John E. Goodman
jgoodman@bradley.com
One of the Attorneys for Plaintiff

OF COUNSEL
Hillary C. Campbell
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Email: hcampbell@bradley.com

9

## VERIFICATION

Jefferson County, Kentucky

I, Jason Chambers, Regional Vice President, having the authority to do so on behalf of Physiotherapy, state that I have reviewed the allegations made in the foregoing Complaint and that such allegations are true and correct to the best of my knowledge, and based (where so indicated) upon my information and belief.

_____
Jason Chambers

Sworn to and subscribed before me this 15 day of December, 2016.

_____
Notary Public

[NOTARIAL SEAL]

My commission expires: 11/10/18

MATTHEW D. VANDERBURG
Notary Public
State at Large
Kentucky
My Commission Expires Nov. 10, 2018

10

**Defendant to be served by process server at the following address**:

James Doug DeLoach
1668 Kahatchee Loop
Childersburg, AL 35044

                                                              /s/ John E. Goodman
                                                                   Of Counsel