# **EXHIBIT C-2**

# **(State Court Complaint)**

DOCUMENT 2

Case 2:17-cv-01226-KOB   Document 1-4   Filed 07/21/17   Page 2 of 14

ELECTRONICALLY FILED
6/21/2017 2:49 PM
01-CV-2017-902501.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| PHYSIOTHERAPY ASSOCIATES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NUMBER: |
| ATI HOLDINGS, LLC, ATHLETIC & THERAPEUTIC INSTITUTE OF NAPERVILLE, LLC, ATI HOLDINGS OF ALABAMA, LLC | ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Physiotherapy Associates, Inc. ("Physiotherapy" or "Plaintiff") states the following for its Complaint against defendants ATI Holdings, LLC ("ATI Holdings"), Athletic & Therapeutic Institute of Naperville, LLC ("ATI of Naperville"), and ATI Holdings of Alabama, LLC ("ATI Holdings of Alabama") (collectively, "Defendants"):

### The Parties, Jurisdiction and Venue

1. Physiotherapy is a corporation organized under the laws of the State of Michigan with its principal place of business in the Commonwealth of Pennsylvania. Physiotherapy is an outpatient rehabilitation services company, providing a wide range of services including general orthopedics, spinal care, neurological rehabilitation, and physical, occupational, and speech therapy. Physiotherapy also provides athletic training services. Physiotherapy operates through numerous locations in Alabama, including multiple locations in this district.

2. Upon information and belief, Defendant ATI Holdings, LLC is an LLC organized under the laws of the State of Illinois with its principal place of business in the State of Illinois. Upon information and belief, ATI Holdings is an outpatient rehabilitation services company, providing services including physical therapy, workers' compensation rehabilitation, and sports

1

medicine, as well as athletic training services. Upon information and belief, ATI Holdings operates through several locations in Alabama.

3. Upon information and belief, Defendant Athletic & Therapeutic Institute of Naperville, LLC is an LLC organized under the laws of the State of Illinois with its principal place of business in the State of Illinois. Upon information and belief, ATI of Naperville is an outpatient rehabilitation services company, providing services including physical therapy, workers' compensation rehabilitation, and sports medicine, as well as athletic training services. Upon information and belief, ATI of Naperville operates through several locations in Alabama.

4. Upon information and belief, ATI Holdings of Alabama, LLC is an LLC organized under the laws of the State of Alabama with its principal place of business in the State of Illinois. Upon information and belief, ATI Holdings of Alabama is an outpatient rehabilitation services company, providing services including, physical therapy, workers' compensation rehabilitation, and sports medicine, as well as athletic training services. Upon information and belief, ATI Holdings of Alabama operates through several locations in Alabama.

## NATURE OF THIS ACTION

5. This dispute centers on Defendants' attempts to unfairly and illegally compete against Physiotherapy by intentionally interfering with Physiotherapy's contractual and business relations – both with Physiotherapy's contractual and business relations with its customers and its employees. Indeed, Defendants have gone so far as to conspire with and aid and abet Physiotherapy's former employee's – James Doug DeLoach ("DeLoach") – breach of his fiduciary duty to Physiotherapy.

**JURISDICTION AND VENUE**

6. Venue is proper in this forum pursuant to Ala. Code § 6-3-7(a)(1).

7. Personal jurisdiction is proper over Defendants because a substantial part of the acts alleged herein occurred in Alabama. Personal jurisdiction is proper because Defendants' acts as further described herein, have had, and threaten to continue to have, adverse impact on Physiotherapy in Alabama.

**STATEMENT OF FACTS**

8. As an outpatient rehabilitation services company, Physiotherapy's customers include, without limitation, the individuals to whom Physiotherapy is providing services, the physician groups whose outpatient rehabilitation practices Physiotherapy manages, the universities and schools with whom it contracts to provide athletic training services, and the physicians and physician groups that serve as Physiotherapy's referral sources. Physiotherapy's primary referral sources are physicians and physician groups. Physiotherapy also receives referrals for physical therapy and other services, like athletic training, for the athletes of the universities and schools with whom it has relationships.

9. Physiotherapy's competitors compete with Physiotherapy for referrals and relationships with physicians, physician groups, universities and schools.

10. James Doug DeLoach ("DeLoach") was an employee of Physiotherapy from February 18, 2013, until his voluntary departure on October 18, 2016.

11. DeLoach's original position with Physiotherapy was an area vice president for the Alabama region, and he eventually became a regional director. In that position, DeLoach had primary oversight for occupational and physical therapy operations for all of Physiotherapy's locations within the region. He was responsible for networking with and developing and

maintaining relationships with customers, including, for example, referring physicians, physician groups, and other referral sources. DeLoach was also responsible for sports medicine outreach with colleges, universities, and secondary schools within his region. In that position he was exposed to and developed, on behalf of Physiotherapy, important business relationships with personnel (including athletic directors, coaches, and physicians) at the said universities and schools. Physiotherapy would, as a result, receive referrals for physical therapy and other services, including athletic training, for the athletes of such universities and schools.

12. Throughout his employment, DeLoach also had access to Physiotherapy's confidential and proprietary information, including, for example, information concerning Physiotherapy's customers, Physiotherapy's business strategies, and Physiotherapy's financial and budget information.

13. On or about March 4, 2013, DeLoach voluntarily executed an agreement with Physiotherapy (hereafter, "Agreement"), which provided terms for his employment and contained certain post-employment competitive restrictions. A copy of the Agreement is appended hereto as Exhibit A and is incorporated herein by reference.

14. In the Agreement, DeLoach agreed, *inter alia*, that during the term of his employment and for a period of twelve (12) months following termination for any reason, he would not:

a. directly or indirectly be employed by or perform services for any business which performs outpatient rehabilitation services in any area within a ten mile radius of any of Physiotherapy's (or any of its affiliates') facilities at which DeLoach provided services during his employment, or for which DeLoach had management or supervisory responsibility while employed (Ex. A, ¶ 1);

  b. solicit, induce, or attempt to induce any past or current customer or vendor of Physiotherapy to cease doing business with Physiotherapy or to do business with any other business which performs services materially similar to or competitive with those of Physiotherapy (*Id.* at ¶ 2); and

  c. induce or attempt to induce any associate of Physiotherapy to leave his or her employment with the company, or employ anyone who was an associate of the company at any time within the last six months of DeLoach's employment with Physiotherapy (*Id.* at ¶ 3).

  15. Upon information and belief, sometime in August 2016, while still employed by Physiotherapy, DeLoach began communicating with Defendants regarding potential employment with Defendants.

  16. Upon information and belief, sometime in August 2016, DeLoach interviewed with Defendants at Defendants' corporate headquarters in Bolingbrook, Illinois.

  17. Upon information and belief, on August 18, 2016, DeLoach sent a copy of the Agreement to Craig Shelton, a recruiter for Defendants.

  18. On August 25, 2016, while still an employee of Physiotherapy, DeLoach sent Brent Mack, the Chief Operating Officer of Defendants, a document entitled "Denovo and Acquisition Strategy." The Denovo and Acquisition Strategy is an action plan drafted by DeLoach that advises Defendants regarding potential development projects in the Alabama market. The Denovo and Acquisition Strategy identifies six locations as immediate potential opportunities for Defendants and provides insight as to why those potential opportunities would be successful. Similarly, the Denovo and Acquisition Strategy identifies a number of post-12 month potential opportunities for ATI. Upon information and belief, some, if not all, of the post-12 month opportunity locations are within the market area in which DeLoach worked while employed with Physiotherapy. Through

5

the Denovo and Acquisition Strategy, DeLoach provided Defendants with information that would enable Defendants to unfairly compete with Physiotherapy.  For example, the Denovo and Acquisition Strategy sets out information concerning: the identity of Physiotherapy's referral sources as well as information about Physiotherapy's referral sources, including, for example, the location of Physiotherapy's referral sources, the location of the referral sources' patient population, the amount of referrals received from particular referral sources, the growth strategy of particular referral sources, and the preferences of referral sources; information about Physiotherapy's growth, expansion, and acquisition strategy and opportunities; information about current and potential Physiotherapy customers, including referral sources, schools, universities, workers' compensation TPA's, and employers; and financial and budget information about Physiotherapy clinics.  Upon information and belief, this information was obtained by DeLoach in the course of his employment with Physiotherapy.  DeLoach's provision of the Denovo and Acquisition Strategy to Defendants was done surreptitiously, and without the knowledge or consent of his employer, Physiotherapy.

19. Upon information and belief, Defendants requested the Denovo and Acquisition Strategy from DeLoach.  And, on August 25, 2016, Defendants acknowledged receiving and reviewing the Denovo and Acquisition Strategy, noting that it was "good stuff."

20. Upon information and belief, by August 26, 2016, Defendants had sent DeLoach an offer letter and employment agreement.

21. Upon information and belief, on September 13, 2016, Defendants sent DeLoach a final offer letter and employment agreement.

22. On September 19, 2016, DeLoach voluntarily resigned his employment with Physiotherapy but continued working for Physiotherapy for a thirty-day notice period. DeLoach's last day of employment with Physiotherapy was October 18, 2016.

23. Upon information and belief, DeLoach, on behalf of Defendants and with the knowledge and assistance of Defendants, diverted potential opportunities from Physiotherapy to Defendants while DeLoach was still employed with Physiotherapy. Such actions were done by DeLoach surreptitiously, and without the knowledge and consent of his employer, Physiotherapy. Upon information and belief, such actions were taken with the knowledge, encouragement, and assistance of Defendants.

24. For instance, upon information and belief, while still employed by Physiotherapy, DeLoach communicated with the University of South Alabama on behalf of Defendants in order to discuss future development opportunities for rehabilitation and athletic training services. Upon information and belief, Defendants were a party to at least one such communication between DeLoach and the University of South Alabama.

25. DeLoach began his employment with Defendants on October 31, 2016, as Regional Director and Clinic Director for Defendants.

26. DeLoach's position with Defendants, on information and belief, involves the same physician networking and sports medicine outreach functions that he performed for Physiotherapy.

27. Upon information and belief, since becoming employed by Defendants, DeLoach has called on or made solicitations to many of Physiotherapy's customers, including Jacksonville State University ("JSU"), a physician group, and multiple area high schools on behalf of Defendants. Upon information and belief, on behalf of ATI, DeLoach has attempted to solicit business from those customers and to convince those customers to terminate or limit their business

with Physiotherapy. Upon information and belief, such actions were taken with the knowledge, encouragement, and assistance of Defendants.

28. Since becoming employed by Defendants, DeLoach, upon information and belief, has solicited many of Physiotherapy's employees on behalf of Defendants. Upon information and belief, such actions were taken with the knowledge, encouragement, and assistance of Defendants.

29. Upon information and belief, Defendants have held a recruitment fair in Birmingham, Alabama.

30. Upon information and belief, Defendants have opened facilities in Birmingham, Alabama, Lincoln, Alabama, and Cullman, Alabama. Upon information and belief, Defendants are currently working to open other locations in the Birmingham market.

31. Upon information and belief, many of DeLoach's activities taken on behalf of and with the encouragement of Defendants have been conducted within a ten mile radius of locations in which Physiotherapy maintains facilities, including at the St. Vincent's campus and the Greystone campus in Birmingham, Alabama, and its Oxford and Anniston, Alabama locations.

32. Many of DeLoach's competitive activities, undertaken on behalf of Defendants, are thus prohibited by the Agreement.

33. Defendants' tortious conduct has and/or will result in significant financial losses to Physiotherapy. Physiotherapy is threatened with the loss of additional revenues if Defendants' breach of the Agreement and tortious conduct continues. Defendants' conduct will also inevitably lead to loss of goodwill and Defendants gaining knowledge of confidential company information regarding Physiotherapy and, among other things, its customers, including referral sources, universities, and schools.

## COUNT I
### Intentional Interference with Contractual/Business Relations

34. Physiotherapy realleges each of the foregoing paragraphs as if set forth in full herein.

35. Defendants had actual knowledge of Physiotherapy's business relationships with its customers, including, for example, JSU and a physician group.

36. Defendants have intentionally interfered with the relationships between Physiotherapy and its customers by engaging in the unlawful and wrongful acts described herein, including, without limitation, utilizing DeLoach to solicit Physiotherapy's customers in violation of his legal and contractual duties and by using Physiotherapy's confidential information provided by DeLoach in violation of his agreement, to have Defendants' employees solicit Physiotherapy's customers.

37. Defendants' interference is without justification.

38. Physiotherapy was damaged and may continue to incur damages as a proximate result of Defendants' actions.

## COUNT II
### Aiding and Abetting

39. Physiotherapy realleges each of the foregoing paragraphs as if set forth in full herein.

40. DeLoach owed a common law fiduciary duty of loyalty to Physiotherapy and acted in violation of his fiduciary duties to Physiotherapy by misappropriating and otherwise using Physiotherapy's confidential and proprietary information, by using Physiotherapy's time, money, and other resources to, at a minimum, misappropriate and otherwise use Physiotherapy's confidential and proprietary information, by failing to pursue opportunities for the benefit of

9

Physiotherapy and/or by positioning himself to act on corporate opportunities for the benefit of himself and Defendants, by taking and diverting business opportunities from Physiotherapy to Defendants, by engaging in self-dealing, by intentionally interfering with Physiotherapy's business relationships, and by acting on behalf of and in furtherance of the interests of Defendants while still employed by Physiotherapy.

41.     The above-described actions were taken in bad faith, lacked the care that an ordinarily prudent person in a like position would exercise, and were contrary to the best interest of Physiotherapy, in violation of Alabama law.  Said actions were perpetrated while DeLoach was still employed by Physiotherapy and were done in anticipation of future competition against Physiotherapy.

42.     Defendants knowingly encouraged and participated in DeLoach's violation of his fiduciary duties to Physiotherapy.

43.     Physiotherapy was damaged and may continue to incur damages as a proximate result of Defendants' actions.

## COUNT III
### Intentional Interference with Contractual/Business Relations

44.     Plaintiff realleges each of the foregoing paragraphs as if set forth in full herein.

45.     Defendants had actual knowledge of the Agreement entered into between DeLoach and Physiotherapy prior to hiring DeLoach.

46.     Despite said knowledge, Defendants have employed DeLoach specifically to compete with Physiotherapy and to solicit Physiotherapy's customers and employees in violation of the Agreement.

47. Defendants' conduct in intentionally employing DeLoach to compete with Physiotherapy and to solicit Physiotherapy's customers and employees in violation of the Agreement constitutes unlawful interference with the Agreement.

48. Defendants' interference is without justification.

49. Physiotherapy was damaged and may continue to incur damages as a proximate result of Defendants' actions.

## COUNT IV
### Conspiracy

50. Plaintiff realleges each of the foregoing paragraphs as if set forth in full herein.

51. Defendants and DeLoach have acted together, in concert with each other, in civil conspiracy to violate the aforesaid contractual and legal duties to Physiotherapy.

52. Physiotherapy was damaged and may continue to incur damages as a proximate result of Defendants' actions.

THEREFORE, Plaintiff prays that this Court will enter judgment against Defendants and award the following relief:

        A.     Compensatory damages in such an amount as the trier of fact determines;

        B.     Punitive damages in such an amount as the trier of fact determines;

        C.     Costs and attorneys' fees; and

        C.     Such additional relief as this Court deems just and equitable.

/s/ John E. Goodman
John E. Goodman (GOO017)
jgoodman@bradley.com
One of the Attorneys for Plaintiff

OF COUNSEL
Hillary C. Campbell (CHI032)
Stanley E. Blackmon (BLA140)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Email: hcampbell@bradley.com
Email: sblackmon@bradley.com

## JURY DEMAND

Plaintiff demands trial by struck jury.

**Defendants to be served by certified mail at the following addresses**:

ATI Holdings, LLC
c/o National Registered Agents, Inc.
208 So La Salle St
Suite 814
Chicago, IL 60604

ATI Holdings of Alabama, LLC
c/o CT Corporation System
2 North Jackson St
Suite 605
Montgomery, AL 36104

Athletic & Therapeutic Institute of Naperville, LLC
c/o National Registered Agents, Inc.
208 So La Salle St
Suite 814
Chicago, IL 60604

          /s/ John E. Goodman
          Of Counsel