**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PHYSIOTHERAPY ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:17-CV-1226-KOB** |
| | ) | |
| **ATI HOLDINGS, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

As the proverb goes, "All is fair in love and war." But does Alabama tort law agree?

In a battle for Alabama's physical therapy market, Plaintiff Physiotherapy Associates, Inc. alleges Defendant ATI Holdings, LLC and its subsidiaries[1] aided and abetted an employee's breach of fiduciary duties and duty of loyalty, misappropriated Physiotherapy's trade secrets, and intentionally interfered with several of Physiotherapy's contractual and business relationships. (Doc. 29). In its motion to dismiss now before this court, ATI contends that nothing it did to woo away Physiotherapy's employees, clients, and referral sources violated the law and that all of Physiotherapy's claims fail. (Docs. 32 & 33). For the reasons stated below, the court finds ATI's arguments only partially convincing and WILL GRANT IN PART and DENY IN PART ATI's motion to dismiss.

## I.  Factual Background

James DeLoach worked for Plaintiff Physiotherapy, an outpatient rehabilitation services company, from February 2013 until October 2016, at which time he voluntarily left to work for ATI, a direct competitor of Physiotherapy that was looking to enter the Alabama market. (Doc. 29 at ¶¶ 11, 25).

---

[1] This Memorandum Opinion refers to all the related defendants as the singular "ATI."

Two months prior to leaving Physiotherapy, Mr. DeLoach and ATI allegedly began communicating about Mr. DeLoach's potential employment with ATI. (Doc. 29 at ¶ 16). These communications included Mr. DeLoach sending ATI a memo entitled "Denovo and Acquisition Strategy," which included suggested geographic areas for ATI to either acquire or open clinics. (*See* Doc. 33-2). DeLoach subsequently resigned from his position with Physiotherapy and went to work for ATI. (Doc. 29 at ¶¶ 24–25, 29).

In December 2016, Physiotherapy filed a lawsuit against Mr. DeLoach in the Northern District of Alabama, *Physiotherapy v. DeLoach*, No. 1:16-cv-2014-ACA (N.D. Ala., Dec. 15, 2016). In *DeLoach*, Physiotherapy alleged Mr. DeLoach breached his employment contract by soliciting Physiotherapy's clients, referral sources, and employees on ATI's behalf, as well as helping ATI compete against Physiotherapy within a prohibited market area. During the pendency of *Deloach*, ATI filed a motion to amend its complaint, seeking to add ATI as a defendant and to add new claims. Judge Axon denied the motion to amend because Physiotherapy had not shown good cause for failing to amend its complaint sooner.

After its motion for leave to amend was denied, Physiotherapy filed the instant action against ATI in the Jefferson County Circuit Court, which ATI removed to this court on July 21, 2017. (Doc. 1). ATI moved to stay this case pending resolution of the case filed against Mr. DeLoach, which this court granted on October 16, 2017. (Doc. 15).

Judge Axon entered judgment for Mr. DeLoach and against Physiotherapy on all its claims on September 17, 2018. *Physiotherapy Assocs., Inc. v. DeLoach*, No. 1:16-CV-2014-ACA, 2018 WL 4409349 (N.D. Ala. Sept. 17, 2018). Judge Axon found that Physiotherapy had failed to produce evidence sufficient to create a question of fact regarding whether Mr. DeLoach breached his non-solicitation agreement by soliciting Physiotherapy's employees. *Id.* at *5–6.

She also concluded that Mr. DeLoach did not violate his employment contract by soliciting Physiotherapy's customers because the employment contract's poor drafting defined Physiotherapy's customers to be Physiotherapy itself. *Id.* at *6. Finally, Judge Axon concluded that Mr. DeLoach did not breach his non-compete clause because the contract did not prohibit him from helping competitors "prepare to compete," which was the extent of Mr. DeLoach's activity before the non-compete clause expired. *Id.* at *8.

Upon entry of the judgment in the *DeLoach* case, this court lifted the stay in this matter on October 3, 2018. (Doc. 27). Physiotherapy filed its amended complaint on November 16, alleging six counts against ATI: aiding and abetting Mr. DeLoach's breach of fiduciary duties and duty of loyalty (Count I); violation of the Alabama Trade Secrets Act (Count II); tortious interference with Physiotherapy's business and contractual relationships with customers (Count III), employees (Count IV), and Mr. DeLoach (Count V); and civil conspiracy (Count VI) to commit the violations described in Counts I–V. (Doc. 29).

ATI filed its answer on November 30 and asserted the complaint's failure to state a claim upon which relief can be granted as its "First Defense." (Doc. 30 at 10). Almost three months later, on February 18, 2019, ATI filed the motion to dismiss now before this court, in which it moved to dismiss each of Physiotherapy's claims. (Doc. 32). After reviewing the parties' briefs on the issues and for the reasons stated below, the court WILL GRANT IN PART and DENY IN PART Defendant ATI's motion to dismiss.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's

claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of its entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

### III. Discussion

As previously stated, Physiotherapy's amended complaint includes six counts: one count of aiding and abetting breach of fiduciary duty and duty of loyalty; one count of violation of the

Alabama Trade Secrets Act; three counts of intentional interference with contractual/business relations; and one count of civil conspiracy to commit the other five counts. (Doc. 29). ATI moves to dismiss each count, and this Memorandum Opinion addresses each one in turn. But it must first address threshold issues the parties raise regarding the timeliness of ATI's motion and collateral estoppel.

### A. Timeliness of ATI's Motion to Dismiss

As an initial matter, Physiotherapy argues the court should deny ATI's entire motion to dismiss as procedurally defective, because ATI filed the motion nearly three months *after* it filed an answer to the amended complaint. (Doc. 38 at 4–5). Physiotherapy cites Fed. R. Civ. P. 12(b), which states that a "motion asserting any of these defenses must be made *before* pleading if a responsive pleading is allowed." Despite the technical correctness of Physiotherapy's timeliness argument, the court accepts ATI's filing.

Although a Rule 12(b) motion must be filed before a responsive pleading, a party can still properly raise the defense of failure to state a claim after an answer in a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(h) (stating that the defense of failure to state a claim may be raised by a motion under Rule 12(c) and is not waived by the failure to raise the defense in a responsive pleading). Considering Rule 12(h), the Eleventh Circuit has noted that an untimely Rule 12(b)(6) motion "*may* be construed as a request for judgment on the pleadings pursuant to [Rule] 12(c)." *Skrtich v. Thornton*, 280 F.3d 1295, 1307 n. 13 (11th Cir. 2002) (emphasis original); *see also Whitehurst v. Wal-Mart Stores East, L.P.*, 329 F. App'x 206, 208 (11th Cir. 2008) (*per curiam*) (rejecting plaintiff's argument that Rule 12(b)(6) motion was untimely because the court could construe it as a Rule 12(c) motion).

Additionally, the court analyzes a Rule 12(c) motion for judgment on the pleadings the same way as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Dial v. City of Bessemer*, No. 2:14-CV-1297-RDP, 2016 WL 3054728, at *3 (N.D. Ala. May 31, 2016) ("A Rule 12(c) motion to judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss."). As such, whether the court construes ATI's motion as a motion to dismiss under 12(b)(6) or a motion for judgment on the pleadings under 12(c) has *no impact* on the court's analysis. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (holding "the district court did not err when it construed the defendants' motion as one for judgment on the pleadings"). Finally, while ATI filed its motion to dismiss after its answer, ATIs argument is not new because it included the grounds of its motion to dismiss in its answer. (Doc. 30 at 10). In the interests of judicial economy, the court construes ATI's motion as a timely Rule 12(c) motion for judgment on the pleadings.

### B. Scope and Impact of Judge Axon's Summary Judgment Ruling in Related Case

Defendant ATI contends that summary judgment against Physiotherapy in the *DeLoach* case estops Physiotherapy from now alleging similar claims against ATI. Physiotherapy argues that collateral estoppel does not apply in this case and that, even if it did, the court's prior factual determinations in *Deloach* do not preclude any of its claims against ATI.

In the Eleventh Circuit, "federal common law borrows the *state* rule of collateral estoppel to determine the preclusive effect of issues decided by a federal court that exercised diversity jurisdiction." *CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017) (emphasis in original). The *DeLoach* court exercised diversity jurisdiction over the matter, so this court must determine whether Alabama's doctrine of collateral estoppel applies to preclude this suit.

Alabama's doctrine of collateral estoppel requires "(1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." *Stinnett v. Kennedy*, 232 So. 3d 202, 219–20 (Ala. 2016) (quoting *Dairyland Ins. Co. v. Jackson*, 556 So. 2d 723, 726 (Ala. 1990)).

ATI's motion identifies at least seventeen findings of fact and conclusions of law from the *DeLoach* ruling that it purports command preclusive effect under Alabama's doctrine of collateral estoppel. (Doc. 33 at 10–11; Doc. 39 at 5–7). Physiotherapy, on the other hand, contends the court only determined five issues possibly subject to collateral estoppel, and that it does not seek to re-litigate any of them in this case. (Doc. 38 at 7).

The court notes that the *DeLoach* case concerned only Mr. DeLoach's *contractual* liability. *DeLoach*, 2018 WL 4409349, at *4 ("Mr. DeLoach asks the court to enter summary judgment in his favor *on Physiotherapy's breach of contract claims*.") (emphasis added). Here, Physiotherapy's claims chiefly stem from Mr. DeLoach's alleged fiduciary duties and duty of loyalty, not his contractual duties. (Doc. 29 at ¶ 40). But Physiotherapy's complaint still references Mr. DeLoach's contractual duties to Physiotherapy as at least partial basis for ATI's liability in this action. For example, Physiotherapy alleged that ATI intentionally interfered with the relationships between Physiotherapy and its employees by "utilizing DeLoach to solicit Physiotherapy's employees in violation of his legal and contractual duties." (Doc. 29 at ¶ 59). Physiotherapy also alleged that ATI intentionally employed DeLoach to solicit Physiotherapy's employees in violation of his contract and that ATI and DeLoach acted together to violate contractual and legal duties to Physiotherapy. (Doc. 29 at ¶¶ 64–65, 69). So, to the extent Physiotherapy attempts to base its claims against ATI on Deloach's contractual obligations that

the ruling in *DeLoach* determined did not exist or contractual violations that the ruling

determined did not occur, the court finds those issues identical to ones litigated in the prior suit.[2]

The court also finds those issues to have been actually litigated and necessary to the prior

judgment, pursuant to the second and third elements of collateral estoppel. Physiotherapy had its

opportunity to argue that its employment agreement with Mr. DeLoach restricted him from

soliciting Physiotherapy customers; it failed. *DeLoach*, 2018 WL 4409349, at *6–8 (interpreting

the non-solicitation provision to define Physiotherapy's "customers" as Physiotherapy itself,

precluding claims that Mr. DeLoach violated that provision). Physiotherapy also had its

opportunity to argue that Mr. DeLoach violated the agreement by soliciting Physiotherapy

employees; again, it failed. *DeLoach*, 2018 WL 4409349, at *5–6 ("Mr. DeLoach is entitled to

summary judgment on Physiotherapy's breach of contract claim to the extent the claim is based

upon his alleged solicitation of Physiotherapy's employees.").

Physiotherapy attempts to narrow those prior determinations to a specific customer and

employee—i.e., Physiotherapy construes the *DeLoach* court to have concluded that "Andrews

Group was not Physiotherapy's customer *as defined in the contract*" and that "there was

insufficient evidence to show that DeLoach solicited Alex Wolf."

As to the non-solicitation of customers, this court understands the *DeLoach* court to have

determined as a matter of law that the Physiotherapy–DeLoach agreement did not prohibit Mr.

DeLoach from soliciting *any Physiotherapy customer* because the agreement defined "customer"

to be Physiotherapy itself. So the court rejects Physiotherapy's attempt to recast the *DeLoach*

ruling as being specific to any one customer. The *DeLoach* court's ruling on the enforceability of

---

[2] As discussed in more detail below, the court does not agree with ATI that all of Physiotherapy's claims derive solely from Mr. DeLoach's alleged violations of his employment agreement. The court's collateral estoppel analysis applies *only* to the parts of Physiotherapy's claims that rely on Mr. DeLoach having breached his employment agreement.

the agreement's non-solicitation of customers provision satisfies the second and third elements of collateral estoppel.

As to the non-solicitation of employees, while the opinion in *DeLoach* discussed only Mr. DeLoach's alleged solicitation of Mr. Wolf, it did so because Physiotherapy apparently failed to produce any evidence that Mr. DeLoach solicited or attempted to solicit anyone else. The court in *DeLoach* did not enter judgment on Physiotherapy's claim that Mr. DeLoach solicited Mr. Wolf; it entered judgment "on Physiotherapy's *breach of contract claim* to the extent the claim is based upon his alleged solicitation *of Physiotherapy's employees*." *DeLoach*, 2018 WL 4409349, at *6 (emphasis added). So, the *DeLoach* ruling satisfies the second and third elements of collateral estoppel as to *any* claim based on Mr. DeLoach's unlawful solicitation of *any* Physiotherapy employees.

Finally, the court must determine whether the instant suit constitutes an action between "the same parties" as contemplated in the fourth element of Alabama's doctrine of collateral estoppel. The Alabama Supreme Court has indicated that the "same parties" requirement can be met even without *identical* parties if the party at issue is "in privity with a party to the prior action." *Dairyland*, 566 So. 2d at 726. Privity is a flexible term that generally applies when a non-party "has his interests adequately represented by someone with the same interests who is a party," such that the parties have an "identity of interest." *Jim Parker Bldg. Co. v. G & S Glass & Supply Co.*, 69 So. 3d 124, 132 (Ala. 2011) (quoting *EEOC v. Pemco Aeroplex, Inc.,* 383 F.3d 1280, 1286 (11th Cir. 2004)); *Dairyland Ins. Co.*, 566 So. 2d at 726. Alabama law has not defined the precise contours of privity, so "the existence of privity has generally been resolved 'on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment.'" *Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner*

& *Smith, Inc.*, 821 So. 2d 158, 165 (Ala. 2001) (quoting *Hughes v. Martin*, 533 So. 2d 188, 191 (Ala. 1988)). In other words, the party seeking estoppel must be "one who would have been prejudiced by a contrary decision in the prior case." *Dairyland Ins. Co.*, 566 So. 2d at 727.

ATI argues that it had an identity of interest with Mr. DeLoach in the *DeLoach* case because "Physiotherapy seeks to hold ATI liable for alleged violations of Mr. DeLoach's contractual duties" and that "each and every one of Plaintiff's claims against ATI is based on conduct of DeLoach." (Doc. 39 at 7). So, according to ATI, a ruling against Mr. DeLoach in that first lawsuit would have prejudiced ATI in the instant action.

The court agrees, but only insofar as Physiotherapy's complaint actually attempts to base its claims on Mr. DeLoach's *contractual* obligations. As noted above, Physiotherapy's instant complaint makes at least four references to Mr. DeLoach's contractual duties to Physiotherapy and ATI's role in Mr. DeLoach breaching those duties. (Doc. 29 at ¶¶ 59, 64–65, 69). Proving that ATI played a role in Mr. DeLoach breaching a contractual duty necessarily requires proving that Mr. DeLoach did in fact breach one. That is, if the ruling in *DeLoach* had determined that Mr. DeLoach *had* breached his employment agreement with Physiotherapy, that determination would clearly prejudice ATI in the instant action by vitiating one potential defense to Physiotherapy's allegations. Put another way, when Mr. DeLoach defended the contract claims against him in *Deloach*, he was adequately representing ATI's interests regarding any potential liability for its involvement in the alleged contractual violations, such that ATI and Mr. DeLoach were in privity because they had an identity of interest. *See Jim Parker Bldg. Co.,* 69 So. 3d at 132 (Ala. 2011); *Dairyland Ins. Co.*, 566 So. 2d at 726. So, the court concludes that ATI and Mr. DeLoach meet the "same parties" requirement for the purposes of collaterally estopping

Physiotherapy from re-litigating issues related to Mr. DeLoach's contractual obligations and compliance.

Accordingly, this case satisfies all four elements of Alabama's doctrine of collateral estoppel. Therefore, Physiotherapy is precluded from relitigating legal and factual issues common to its claims regarding Mr. DeLoach's alleged breach of contract in supposed solicitation of Physiotherapy's employees or customers in violation of Mr. DeLoach's non-solicitation agreement with Physiotherapy that the court decided in *DeLoach. See Lee L. Saad Const. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 519 (Ala. 2002) (stating that collateral estoppel prevents parties from relitigating factual issues common to its claims that have already been determined).

### C. Aiding and Abetting Breach of Fiduciary Duty and Duty of Loyalty

Count I of Physiotherapy's complaint alleges that ATI "knowingly encouraged, aided, abetted, and participated in DeLoach's violation of his fiduciary duty and duty of loyalty to Physiotherapy." (Doc. 29 at ¶ 42). As an initial matter, ATI appears to concede and this court acknowledges that none of the *DeLoach* court's determinations as to Mr. DeLoach's contractual obligations have any preclusive effect on this claim. (Doc. 33 at 12) ("Physiotherapy now attempts to expand its focus from Mr. DeLoach's contractual duties to Mr. DeLoach's alleged fiduciary duties.") (emphasis in original). Count I of the complaint sounds in tort, not contract, so the court analyzes the claim without any deference to the ruling in *DeLoach*.

But ATI argues that the court should still dismiss Count I because Alabama tort law does not recognize a claim for aiding and abetting a breach of fiduciary duty. (Doc. 33 at 12–13). ATI cites two Northern District of Alabama decisions to support its position. *See Bradley v. Franklin Collection Serv., Inc.*, No. 5:10-CV-1537-AKK, 2011 WL 13134961, at *14 (N.D. Ala. Mar. 24,

2011) ("Unlike other states, it does not appear that Alabama recognizes the claim of aiding and abetting common law torts.") (quoting *Continental Cas. Co. v. Compass Bank*, 04-766-KD-C, 2006 WL 566900, at *11 (S.D. Ala. Mar. 6, 2006)); *Estate of Rodriguez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1258 (N.D. Ala. 2003) (Bowdre, J.).

Physiotherapy argues that Alabama case law has not clearly articulated any such prohibition and that certain cases indicate that Alabama *does* recognize claims for aiding and abetting common law torts. (Doc. 38 at 16). In support of its argument, Physiotherapy cites two Alabama Supreme Court cases that purportedly recognized claims for aiding and abetting violations of fiduciary obligations, as well as a nearly century-old Alabama Supreme Court case recognizing a claim for aiding and abetting fraud. *See Regions Bank v. Reed*, 60 So. 3d 868, 885 (Ala. 2010); *Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*, 390 So. 2d 601 (Ala. 1980); *Riles v. Coston-Riles Lumber Co.*, 95 So. 43, 45–46 (Ala. 1922). Physiotherapy alternatively argues that its claim at least presents an unsettled question of law and that the court should recognize the tort because the Alabama Supreme Court would likely do so if faced with the issue. (Doc. 38 at 17).

After reviewing the cases Physiotherapy cites, the court concludes that none of them clearly recognized an action for aiding and abetting a common law tort, such as breach of a fiduciary duty. In *Reed*, the Alabama Supreme Court decided a jurisdictional issue regarding a probate court's ability to adjudicate claims of maladministration and mismanagement against a bank. 60 So. 3d at 878 ("The threshold question before us . . . is whether § 19-3B-203(b), Ala. Code 1975, grants the probate court jurisdiction to hear the claims brought by the sisters in the circuit court actions."). The Supreme Court held that Alabama law granted a probate court jurisdiction to hear the plaintiff-beneficiaries' claims against the defendant-trustee. *Id.* at 883.

The Supreme Court also held that, pursuant to that jurisdiction, the probate court had jurisdiction to hear the claims derivative of the plaintiffs' claims against the trustee. *Id.* at 885. The plaintiffs' claims for aiding and abetting the trustee's breaches of duty, the court noted, clearly derived from the breaches themselves and, therefore, fell within the jurisdiction of the probate court. *Id.* This passing reference to the plaintiffs' aiding and abetting cause of action for the purpose of assigning jurisdiction of derivative claims does not, as Physiotherapy claims, recognize the viability of an aiding and abetting claim under Alabama law. The Court in *Reed* did not squarely address the issue of whether Alabama law recognizes such claims, and the opinion does not indicate that the parties provided any briefing or argument on the matter. At most, the Court in *Reed* indicated that *if* plaintiffs can bring claims for aiding and abetting breaches of fiduciary duties, such claims constitute actions derivative of the underlying breach over which the probate court had jurisdiction.

In *Shades Ridge*, the Alabama Supreme Court similarly failed to actually recognize the cause of action of aiding and abetting a breach of fiduciary duty and instead merely listed aiding and abetting a fiduciary breach among plaintiff's claims. 390 So. 2d at 603–604; *see also Continental Cas.*, 2006 WL 566900, at *11. Although the plaintiff in *Shades Ridge* apparently brought a claim for aiding and abetting breach of fiduciary duty, the trial court found that no such underlying fiduciary duty existed, and the Court affirmed that finding. 390 So. 2d at 616 ("Therefore, we cannot fault the trial court for finding no issue as to whether a fiduciary duty existed."). So, the *Shades Ridge* Court had no occasion to determine the viability of a claim for aiding and abetting the breach of a fiduciary duty that it found did not exist.

Physiotherapy alternatively argues that, in the event the court concludes Alabama law is unclear on this issue, the court should still recognize the claim in this action because "Alabama

courts would likely recognize [the] claim" if given the chance. (Doc. 38 at 17). The court declines Physiotherapy's invitation to forecast state law in this situation.

The Eleventh Circuit has advised federal courts of their "duty to decide what the state courts would hold if faced with" an undecided issue of state law. *Guideone Elite Ins. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n. 5 (11th Cir. 2005). But the court notes an important distinction between resolving an unclear *issue* of state law and recognizing for the very first time a brand new cause of action. As another court wisely noted, "[a]s long as representative government exists, there is no excuse for a court arrogating to itself the authority to move the law along some purportedly wise or socially desirable path. Nor should lawyers tempt judges to exercise the power of a benevolent despot." *Gravins v. Int'l Playtex, Inc.*, 586 F. Supp. 251, 252 (E.D. Va. 1984).

Recognizing aiding and abetting breach of a fiduciary duty as a cause of action would not simply further develop an unresolved area of Alabama law but would instead create a *new* area of Alabama law; the court declines to do so. Instead, the court will adhere to the previous decisions from this district that found that Alabama law does not recognize claims for aiding and abetting violations of fiduciary obligations. *See Bradley*, No. 5:10-CV-1537-AKK, 2011 WL 13134961, at *14; *Estate of Rodriguez*, 256 F. Supp. 2d at 1258.

Further, the court declines to grant Physiotherapy's request for certification of the question to the Alabama Supreme Court. The Eleventh Circuit has stated that, "when substantial doubt exists about the answer to a material state law question upon which the case turns," the case should be certified to the state supreme court to "avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law." *Forgione v. Dennis Pirtle Agency, Inc.,* 93 F.3d 758, 761 (11th Cir. 1996). However, "where no ambiguities

currently exist in that law and no substantial doubt exists about the answer to a material state law issue," the court has no reason to certify the question to the state supreme court. *Pharr v. Harris*, No. CV-15-BE-1362-E, 2016 WL 1595077, at *2 (N.D. Ala. Apr. 21, 2016) (Bowdre, J.).

Here, Physiotherapy has failed to show any "substantial doubt" about whether Alabama state law recognizes a cause of action for aiding and abetting the breach of a fiduciary duty. As discussed above, neither *Reed* nor *Shades Ridge* actually recognized or even addressed a cause of action for aiding and abetting the breach of a fiduciary duty. *See Reed*, 60 So. 3d at 885; *Shades Ridge*, 390 So. 2d at 616. The cases that have directly addressed the issue have all found that Alabama law does not recognize a cause of action for aiding and abetting breach of a fiduciary duty. *See Bradley*, No. 5:10-CV-1537-AKK, 2011 WL 13134961, at *14; *Estate of Rodriguez*, 256 F. Supp. 2d at 1258; *Continental Cas. Co.*, 04-766-KD-C, 2006 WL 566900, at *11.

In fact, in *Continental Casualty Co.*, the court concluded that neither *Shades Ridge* nor *Riles*—the case involving aiding and abetting fraud on which Physiotherapy relies—indicated that Alabama law recognizes a claim of aiding and abetting the breach of a fiduciary duty. *Continental Cas. Co.*, 04-766-KD-C, 2006 WL 566900, at *11–12. Although *Continental Casualty Co.* did predate *Reed*, *Reed* did not actually address the availability of a claim for aiding and abetting breach of a fiduciary duty, so *Reed* did not change the legal landscape on the issue. In view of the relevant caselaw, no ambiguity in the law currently exists. Therefore, the court will not certify the issue to the Alabama Supreme Court. *See Pharr*, No. CV-15-BE-1362-E, 2016 WL 1595077, at *2.

Accordingly, the court follows the lead of every other court to have directly addressed this issue and concludes that Alabama tort law does not recognize aiding and abetting either the breach of a fiduciary duty or duty of loyalty as a colorable claim. The court WILL GRANT

ATI's motion to dismiss Physiotherapy's aiding and abetting claim and WILL DISMISS WITH PREJUDICE Count I of the amended complaint.

   *D. Sufficiency of Physiotherapy's Trade Secrets Allegations*

   Count II of Physiotherapy's amended complaint alleges that ATI "solicited and received [Physiotherapy's trade secrets] from DeLoach" and misappropriated that information "to gain a substantial competitive advantage over Physiotherapy." (Doc. 29 at ¶¶ 49–50). The alleged trade secrets at issue appear in a memo entitled "Denovo and Acquisition Strategy" that Mr. DeLoach wrote and sent to ATI while still a Physiotherapy employee. (Doc. 29 at ¶¶ 19, 45). ATI argues that the amended complaint fails to plead facts sufficient to establish that the Alabama Trade Secrets Act protects the information contained in the memo. (Doc. 33 at 13–21).

   The ATSA defines a "trade secret" as information that

   a. Is used or intended for use in a trade or business;

   b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;

   c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;

   d. Cannot be readily ascertained or derived from publicly available information;

   e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

   f. Has significant economic value.

Ala. Code § 8-27-2(1) (1975). The ATSA requires the information at issue to satisfy all the subsections, "a through f," to qualify as a protectible trade secret. *Ex parte Indus. Warehouse Servs., Inc.*, 262 So. 3d 1180, 1186 (Ala. 2018).

   Whether information qualifies as a trade secret under Alabama law generally raises a question of fact. *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1158 (11th Cir. 2004) (citing *Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1366, 1372 (Ala. 1994)). ATI asserts that

Physiotherapy has failed to adequately plead that the memo contains (1) information included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process; (2) information not readily ascertainable from publicly available information; or (3) information that Physiotherapy reasonably attempted to keep secret, and, thus, has not met the elements to show that the memo is a trade secret.

<u>1. Included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process</u>

ATI argues that the memo Mr. DeLoach sent to ATI did not contain trade secrets because the information "derived merely from Mr. DeLoach's 'head knowledge.'" (Doc. 33 at 19). Such head knowledge, ATI contends, does not satisfy the requirement that trade secrets be included or embodied in a formula, compilation, or any of the other recognized mediums. Physiotherapy argues that the type of information contained in the memo—which Physiotherapy describes as "business plans and strategies, financial and budget information, and detailed customer and referral information"—has constituted protectible information under the ATSA in other cases. Specifically, Physiotherapy points to cases indicating that customer lists, financial statements and metrics, sales and pricing information, and marketing strategies are all recognized examples of protectible trade secrets. *See, e.g.*, *Movie Gallery U.S., LLC v. Greenshields*, 648 F. Supp. 2d 1252, 1264 (M.D. Ala. 2009) (finding customer lists to be protectible because, among other things, they were compilations of a great deal of information about the customers); *Ex parte W.L. Halsey Grocery Co.*, 897 So. 2d 1028, 1034–35 (Ala. 2004) (finding company's financial information to be protectible based in part on the finding that the information was a compilation because it assembled information from different sources and combined it into one document).

At the pleadings stage, Physiotherapy must only plausibly allege the memo contains information embodied or included in a recognized medium. After reviewing the memo itself,

which Physiotherapy's complaint incorporates by reference and ATI attached to its motion to dismiss, the court concludes that the information in it at least plausibly contains the type of information other courts have considered protectible as a compilation under the ATSA and similar trade secrets acts.

For example, the memo mentions that CSM (an entity affiliated with Physiotherapy) "is planning on opening a facility in [Cullman, AL] by end of the year, but no lease signed as of yet." (Doc. 33-2 at 2). The memo also identifies athletic trainers "in the [Decatur] area [who] have reached out multiple times for opportunities with CSM" and a doctor who had "discussed with [Mr. DeLoach] on many occasions around CSM opening up a clinic in" Dothan. (Doc. 33-2 at 2–3). The memo also reveals details about Physiotherapy's top referral sources and identifies a particular clinic as being "one of [Mr. DeLoach's] strongest EBITDA margin clinics." (Doc. 33-2 at 4–5).

The court does not need to opine as to the ultimate characterization of this information; it only needs to conclude that the ATSA plausibly protects it. Because the memo contains specifics about referral sources, strategies for growth and expansion, and financial data combined into one document, the court concludes that it is plausible that the memo qualifies as a compilation that is protectible under the ATSA. *See Movie Gallery U.S., LLC*, 648 F. Supp. 2d at 1264; *Ex parte W.L. Halsey Grocery Co.*, 897 So. 2d at 1034–35.

### 2. Not readily ascertained or derived from publicly available information

ATI also argues that Physiotherapy failed to plead facts sufficient to establish that the memo contained information not publicly known or readily ascertainable from available information. (Doc. 33 at 17). Specifically, ATI appears to challenge the information in the memo about Physiotherapy's referral sources, arguing that Physiotherapy "makes no effort [] to explain how a third-party's information would somehow constitute a Physiotherapy 'trade secret' or why

ATI would be unable to ascertain this information directly from those third-parties." (Doc. 33 at 17).

As an initial matter, the Alabama Supreme Court has recognized that information about third parties, customers in particular, can constitute trade secrets in proper circumstances. *See Pub. Sys., Inc. v. Towry*, 587 So. 2d 969, 973 (1991) ("Those lists that have been afforded protection as trade secrets have contained specific *information about customers*, for example, their buying habits.") (emphasis added). Here, the memo contains information about referral sources, not customers. But the court sees no reason (and ATI has provided none) to distinguish between customers and referral sources in the context of determining when third-party information might constitute trade secrets. So, to the extent ATI attempts to argue that third-party information cannot constitute trade secrets, the court rejects that argument.

ATI finally argues that even if the ATSA protects third-party information, all of the third-party information contained in the memo was either publicly known or readily ascertainable. But the memo contains information about the relative strength of referral sources, as well as the plans of referral sources to expand in specific communities, none of which appears on its face to be publicly known or readily ascertainable. (Doc. 33-2 at 4). While additional evidence could provide context showing that the information was publicly available or readily ascertainable, at the motion to dismiss stage the complaint need only allege that the memo contained plausibly protectible information. The court concludes the information in the memo meets this burden.

### 3. Subject of efforts that are reasonable under the circumstances to maintain its secrecy

ATI also argues that the amended complaint fails to plead facts sufficient to establish that Physiotherapy used efforts reasonable under the circumstances to maintain the secrecy of the information in the memo. Physiotherapy contends that its non-solicitation agreement with Mr.

DeLoach and its filing this lawsuit constitute reasonable efforts to maintain the information's secrecy. Physiotherapy also argues that courts generally disfavor dismissing trade secrets claims for failing to plead reasonable efforts, as determining the sufficiency of such measures constitutes a question of fact.

As the court noted above, whether information satisfies the definition of "trade secret" generally constitutes a question of fact. *Peat*, 378 F.3d at 1158. So, the court must only determine if the amended complaint plausibly alleges that Physiotherapy took reasonable steps to maintain the information's privacy.

Physiotherapy's amended complaint fails to allege *any* efforts it took to maintain the secrecy of the information. The complaint only includes the legal conclusion that the "information was the object of efforts to maintain its secrecy by Physiotherapy that were reasonable under the circumstances" but fails to describe any of the supposedly reasonable efforts. (Doc. 29 at ¶ 48); *see Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-CV-1682-TMC, 2012 WL 6761527, at *6 (D.S.C. Nov. 20, 2012) ("Plaintiffs' bare allegation that it took reasonable efforts to maintain the secrecy of PEM is a legal conclusion, which the Court need not accept."), *relevant portion adopted by* 2013 WL 41001 (D.S.C. Jan. 3, 2013).

In response to ATI's motion to dismiss, Physiotherapy identified *for the first time* two actions it took to maintain the information's privacy: (1) Mr. DeLoach's non-solicitation agreement, and (2) the filing of this lawsuit. (Doc. 38 at 21). Setting aside the appropriateness of relying on factual allegations raised for the first time in response to a motion to dismiss, the efforts Physiotherapy identifies still cannot carry its burden of plausibly alleging reasonable efforts to maintain the information's secrecy.

As ATI points out, Physiotherapy provides no authority to support construing this lawsuit or its prior lawsuit against Mr. DeLoach as constituting a reasonable attempt to maintain the information's secrecy. And the court notes that concluding otherwise would all but vitiate that element of the trade secret definition, because filing a lawsuit would automatically satisfy it. The court also notes that courts discussing "efforts that are reasonable" often refer to such efforts as "precautions," further supporting this court's view that the measures must be preemptive, not reactive. *See, e.g.*, *Health Assurance, LLC v. Advanced Corr. Healthcare, Inc.*, No. 2:12-CV-3634-LSC, 2015 WL 4507209, at *6 (N.D. Ala. July 23, 2015). Further, filing a lawsuit is a public action, which undermines its validity as an effort to maintain secrecy. So the court completely disregards Physiotherapy's lawsuit against Mr. DeLoach and the instant action as helping establish that it took reasonable efforts to maintain the secrecy of the information in the memo.

Physiotherapy's reliance on Mr. DeLoach's non-solicitation agreement also fails. While Physiotherapy cites one Alabama Supreme Court case showing that a non-solicitation agreement *can* constitute an effort to maintain the secrecy of information, the non-solicitation agreement in that case included a confidentiality provision related to trade secrets. *Ex parte W.L. Halsey Grocery Co.*, 897 So. 2d at 1034. As that court noted, the "nonsolicitation agreement explicitly informs the employee that much of the information to which the employee will have access is 'trade secret and other confidential information.'" *Id.* No such language—or anything close— appears in the non-solicitation provision of Mr. DeLoach's employment agreement.

But still, Physiotherapy asks this court to infer that its non-solicitation agreement "demonstrates Physiotherapy's efforts to maintain the secrecy of its trade secrets by preventing DeLoach from using trade secrets to solicit customers." (Doc. 38 at 24). But the non-solicitation

provision does not prevent Mr. DeLoach from using trade secrets to solicit customers; it prevents Mr. DeLoach from soliciting customers *at all* and makes no reference to potential trade secrets or confidential information. (*See* Doc. 1-5 at 5–6).

So, the court concludes that Physiotherapy has failed to plausibly allege any facts establishing that Physiotherapy used reasonable efforts to maintain the secrecy of the information in the memo. Because information must meet *all* of the elements of a trade secret to qualify as protectible, Physiotherapy has not shown that the memo at issue was a protectible trade secret. *See Ex parte Indus. Warehouse Servs., Inc.*, 262 So. 3d at 1186. Therefore, the court WILL GRANT ATI's motion to dismiss Physiotherapy's trade secrets claim for failing to allege that the information at issue qualifies as a trade secret and WILL DISMISS WITHOUT PREJUDICE Count II of Physiotherapy's amended complaint.

### E. Sufficiency of Physiotherapy's Contractual and Business Interference Claims

Counts III, IV, and V of Physiotherapy's amended complaint allege that ATI intentionally interfered with Physiotherapy's relationships with customers, employees, and Mr. DeLoach, respectively. (Doc. 29 at ¶¶ 54, 59, 65).

To state a claim for intentional interference with business relations under Alabama law, a plaintiff must establish "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009) ("*White Sands II*"). Alabama courts have distinguished between interference with business relationships and contractual relationships. *White Sands Grp. v. PRS II, LLC*, 998 So. 2d 1042, 1054 (Ala. 2008) ("*White Sands I*") ("It is widely recognized that tortious interference with a contractual relationship is a claim separate and distinct from interference with a business

relationship or expectancy."). But the elements of the two claims differ as to the first element only: "Tortious interference with contractual relations . . . differs as to the first element . . . because '[a] claim for tortious interference with a contractual relationship presupposes the existence of an enforceable contract.'" *Hope For Families & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1177 (M.D. Ala. 2010) (quoting *White Sands I*, 998 So. 2d at 1054). Physiotherapy alleges interference of both contractual and business relationships.

### 1. Count III—Intentional interference with customer relationships

As to Physiotherapy's claim for tortious interference with its customer relationships in Count III, ATI argues that Physiotherapy "has not alleged facts to demonstrate a protectable business relationship or knowledge on the part of [] ATI about the existence of such a relationship." (Doc. 33 at 22). ATI also argues that dismissal of Counts I and II mandates dismissal of Count III because Physiotherapy bases the wrongful interference claim on the conduct alleged in Counts I and II.

As an initial matter, a cursory review of the complaint compels the court to disregard ATI's contention that Physiotherapy failed to allege "knowledge on the part of [] ATI." The amended complaint clearly alleges ATI's "actual knowledge of Physiotherapy's business and/or contractual relationships with its customers." (Doc. 29 at ¶ 53). Specifically, Physiotherapy alleges that ATI knew about Physiotherapy's business or contractual relations with Jacksonville State University and Troy University because of Mr. DeLoach. (Doc. 29 at ¶¶ 31, 53).

Tortious interference claims also require the plaintiff to allege a protectible business relationship. To satisfy the "protectible business relationship" element of a tortious interference claim, a plaintiff does not need to establish a contractual relationship. *White Sands II*, 32 So. 3d at 14–15. Instead, "the inquiry in this tort is which interests along the continuum of business

dealings are protected." *Id.* at 15 (quotations, citations, and emphasis omitted). At the pleading stage, the plaintiff must only plausibly plead "a relationship based on a reasonable expectation of a commercial benefit." *Id.* at 16.

Here, Physiotherapy specifically alleges that ATI utilized Mr. DeLoach to solicit "many of Physiotherapy's customers, including, for example, Jacksonville State University ("JSU"), Troy University, and multiple area high schools." (Doc. 29 at ¶ 31). The complaint defines "customers" to include "the universities and schools with whom [Physiotherapy] contracts to provide athletic training services." (Doc. 29 at ¶ 9). The complaint provides no other details about the nature of its relationship with these schools, but the memo Mr. DeLoach sent to ATI provides a bit more context for Physiotherapy's relationship with Jacksonville State.

Specifically, the memo provides that Mr. DeLoach, apparently while Physiotherapy's employee, had developed "good relationships with AD and others within Jacksonville State University" and "had discussions with the university about setting up an on campus PT clinic." (Doc. 33-2 at 3). The memo went on to describe Jacksonville State as "very receptive" to opening a new clinic and eager to discuss the plan at a later date. (Doc. 33-2 at 3–4). Jacksonville State had even apparently requested "a proposal to take over their ATC staff." (Doc. 33-2 at 4).

Accepting Physiotherapy's allegations as true and making all reasonable inferences in its favor, the court concludes that the complaint and memo at least plausibly establish that Physiotherapy's relationship with Jacksonville State constituted one far enough along the continuum of business dealings to give rise to a reasonable expectation of a commercial benefit. The memo in particular provides details that, if proven true, could help establish that Physiotherapy had a reasonable expectation that it might be able to partner with Jacksonville State to open a new clinic or take over some of Jacksonville State's staff, both of which would

24

presumably provide Physiotherapy some commercial benefit. So, the court declines to dismiss Count III of the amended complaint for failing to sufficiently plead a protectible business relationship.

Finally, ATI argues that Physiotherapy explicitly bases Count III on the wrongful conduct alleged in Counts I and II, mandating dismissal if the court dismisses Counts I and II. (Doc. 33 at 20–21). Because the court will dismiss Counts I and II, it must address this argument.

But, "as part of the plaintiff's *prima facie* case, the plaintiff is not required to prove that the defendant's conduct was 'wrongful' or 'improper.'" *Daily v. Rawlings Co.*, No. 2:15-CV-1138-VEH, 2016 WL 192071, at *12 (N.D. Ala. Jan. 15, 2016). Rather, the court only evaluates the nature of a defendant's conduct when determining if a defendant's interference qualifies as "justified," which the Alabama Supreme Court has explicitly classified as "an affirmative defense to be pleaded and proved by the defendant." *White Sands II*, 32 So. 3d at 12. But the existence of an affirmative defense may be clear from the face of the pleadings, in which case a Rule 12(b)(6) dismissal is appropriate. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Here, Physiotherapy bases Count III on the conduct it alleged in Counts I and II. Physiotherapy alleges ATI "intentionally interfered with the relationships between Physiotherapy and its customers *by . . . aiding and abetting DeLoach's breach of his fiduciary duties . . .* and utilizing the information gained through DeLoach's breach and in violation of the Alabama Trade Secrets Act." (Doc. 29 at 54).

ATI calls Count III derivative of Counts I and II and argues that because (1) Alabama tort law does not recognize claims for aiding and abetting a breach of fiduciary duties, and (2) the information at issue was not protectible under the ATSA, this court should dismiss Count III of the amended complaint as based on other claims that fail as a matter of law. (Doc. 33 at 22).

But ATI provides no authority, and this court has found none, indicating that the alleged conduct giving rise to a claim for tortious interference must itself be tortious. In fact, comment c to *Restatement (Second) of Torts § 767*, which the Alabama Supreme Court adopted in *Gross v. Lowder Realty Better Homes & Gardens*, 494 So. 2d 590 (1986), states that "[u]nder some circumstances the interference is improper *even though innocent means are employed*." (emphasis added).[3] So, the court declines to dismiss Count III just because Physiotherapy bases these claims on conduct described in alternative claims that *do* fail as a matter of law.

Having declined to adopt any of the grounds ATI raises for dismissing Count III of Physiotherapy's amended complaint, the court WILL DENY ATI's motion to dismiss Count III.

### 2. Count IV—Intentional interference with employee relationships

ATI's arguments for dismissing Count IV are largely duplicative of its arguments for dismissing Count III. Count IV of the amended complaint alleges that ATI "intentionally interfered with the relationships between Physiotherapy and its employees by engaging in the unlawful and wrongful acts described [in Counts I and II] and by utilizing DeLoach to solicit Physiotherapy's employees in violation of his legal and contractual duties." (Doc. 29 at ¶ 59). ATI contends that the court should dismiss this claim because (1) it fails to identify a single employee ATI solicited (either directly or through Mr. DeLoach); (2) it relies on conduct alleged in the legally insufficient Counts I and II; and (3) it relies on allegations the prior *DeLoach* action already determined did not occur.

As to ATI's argument that Count IV constitutes a derivative action of Counts I and II and therefore cannot survive without them, the court's analysis of this argument as to Count III applies with equal force here. Again, ATI has not shown that it did not commit wrongful or

---

[3] The Alabama Supreme Court also approvingly quoted this portion of comment c in *White Sands II*, 32 So. 3d at 13.

improper conduct such that a justification defense meriting dismissal is apparent on the face Physiotherapy's complaint. *See White Sands II*, 32 So. 3d at 12; *Bock*, 549 U.S. at 215.

But ATI's argument that the prior *DeLoach* ruling estops Physiotherapy from re-litigating the factual question of whether ATI solicited Physiotherapy employees presents a different question. That is, if a valid court ruling already determined as a matter of law that *ATI* did not solicit Physiotherapy employees, Physiotherapy's claim that ATI intentionally interfered with Physiotherapy-employee relationships *by soliciting those employees* must fail pursuant to the doctrine of collateral estoppel.

But, as discussed above, the prior *DeLoach* ruling made no such determination. The *DeLoach* court entered judgment for Mr. DeLoach as to solicitation by him of Physiotherapy employees, but it did so only "to the extent the claim [was] based upon *his* alleged solicitation of Physiotherapy's employees." *DeLoach*, 2018 WL 4409349, at *5–6 (emphasis added). Count IV, however, alleges that *ATI* solicited Physiotherapy employees. (Doc. 29 at ¶ 59). ATI was not a party in the *DeLoach* action, and the *DeLoach* court made no determination whether ATI solicited Physiotherapy employees.

Granted, Count IV also alleges that Physiotherapy "utiliz[ed] DeLoach to solicit Physiotherapy's employees in violation of his legal and contractual duties." (Doc. 29 at ¶ 59). So, to the extent Count IV relies on the allegation that *Mr. DeLoach* solicited Physiotherapy employees on ATI's behalf, the court agrees that collateral estoppel precludes the claim. Physiotherapy argues that the *DeLoach* ruling "does not necessitate a finding in this action that DeLoach did not breach *any* of his contractual duties." (Doc. 33 at 30) (emphasis in original). The court agrees, but Count IV specifically alleges ATI utilized Mr. DeLoach *to solicit* Physiotherapy employees. And the prior *DeLoach* ruling explicitly entered judgment against

Physiotherapy on its claim that Mr. DeLoach violated his employment contract by soliciting Physiotherapy employees. Where Physiotherapy specifically alleged in the instant complaint that Mr. DeLoach solicited employees on ATI's behalf in violation of his contract, Physiotherapy cannot evade the application of estoppel by arguing that the *DeLoach* decision did not foreclose a finding that Mr. DeLoach violated his contractual duties in some other way.

Physiotherapy also attempts to narrow the *DeLoach* ruling as finding *only* that Physiotherapy failed to prove Mr. DeLoach solicited one specific employee – Alex Wolf. (Doc. 38 at 30). But such a reading misunderstands the breadth of what is required for an issue to be "actually litigated" in a prior action. While the *DeLoach* opinion only discussed evidence related to Mr. DeLoach's alleged solicitation of Mr. Wolf, it entered judgment against Physiotherapy on its "breach of contract claim to the extent the claim [was] based upon [Mr. DeLoach's] alleged solicitation of Physiotherapy's *employees. DeLoach*, 2018 WL 4409349, at \*6. That is, the *DeLoach* court entered judgment against Physiotherapy as to claims that Mr. DeLoach solicited *any* Physiotherapy employee. The court will not limit that judgment because Physiotherapy only produced enough evidence in that action to warrant discussion of one such employee. So, the court WILL DISMISS Count IV to the extent that it relies on alleged solicitation by Mr. DeLoach on behalf of ATI, an issue the court finds subject to collateral estoppel.

Finally, ATI argues that Physiotherapy's failure to identify a single employee relationship with which ATI has interfered necessitates dismissal. Physiotherapy argues that requiring it to name in its complaint specific employees who Physiotherapy solicited would "go beyond the requirements of Rule 8, as well as *Twombly* and *Iqbal*." (Doc. 38 at 29). But Rule 8 still obligates a plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations and quotations omitted).

Count IV of the amended complaint offers only the conclusory statement that ATI wrongfully solicited Physiotherapy employees. Not only does it fail to specify any employee, the complaint fails to allege how ATI supposedly solicited Physiotherapy's employees, other than alleging it did so through Mr. DeLoach, which the court disregards for the reasons stated above. Physiotherapy ultimately makes nothing more than a naked assertion that ATI wrongfully solicited unknown employees in an unknown manner. Such an assertion fails to provide ATI proper notice of Physiotherapy's claim against it, and it fails to raise more than merely possible claim of wrongful conduct. So, the court WILL GRANT ATI's motion to dismiss Physiotherapy's claim for tortious interference with its employee relationships and WILL DISMISS Count IV for failing to state a claim upon which the court can grant relief.

### 3. Count V—Intentional interference with relationship with Mr. DeLoach

Count V of the complaint alleges ATI wrongfully interfered with Physiotherapy's relationship with DeLoach by employing him "specifically to solicit Physiotherapy's employees in violation of [his employment contract]." (Doc. 29 at 64). Again relying on the prior *DeLoach* ruling, ATI argues that the judgment determined as a matter of law that Mr. DeLoach did not solicit Physiotherapy employees in violation of his employment contract and that the court, therefore, cannot hold ATI liable for hiring him to do so. (Doc. 33 at 24).

In response, Physiotherapy merely restates its position that collateral estoppel cannot apply to these claims. (Doc. 38 at 30–31). But, the court already concluded that collateral estoppel precludes any of Physiotherapy's claims against ATI that require a finding that Mr. DeLoach breached his employment contract by soliciting Physiotherapy employees. So, the court

WILL GRANT ATI's motion to dismiss Count V as collaterally estopped and WILL DISMISS Physiotherapy's claim that ATI intentionally interfered with Physiotherapy's contractual relationship with Mr. DeLoach.

### F. Physiotherapy's Conspiracy Claim

Finally, Count VI of the amended complaint alleges ATI and Mr. DeLoach engaged "in civil conspiracy to violate the aforesaid contractual and legal duties to Physiotherapy." (Doc. 29 at ¶ 69). ATI moves to dismiss Physiotherapy's conspiracy claim as derivative, arguing that dismissal of Counts I–V would require dismissal of Count VI. (Doc. 33 at 24). But the court has decided not to dismiss Count III of the amended complaint, which alleged tortious interference with customer relationships. Alabama recognizes civil conspiracy as a substantive tort that "operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer's acts." *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010). Therefore, if a plaintiff shows that a defendant worked with someone else to engage in unlawful conduct, the plaintiff can bring a civil conspiracy claim against the defendant. *Staples v. H. Walker Enterprises, LLC*, No. 7:18-CV-00160-LSC, 2019 WL 3322803, at *12 (N.D. Ala. July 24, 2019) (citing *DGB*, 55 So. 3d at 234). Because Physiotherapy plausibly alleged tortious interference with customer relationships in Count III and alleged that ATI worked with Mr. DeLoach to engage in the alleged wrongdoing, this court rejects this argument for dismissing Count VI.

ATI also argues "Physiotherapy's conspiracy claim is based on an alleged violation of Mr. DeLoach's contractual duties" and that "Alabama law does not recognize a claim for a conspiracy to breach of contract." (Doc. 33 at 24–25) (citing *Ponder v. Lake Forest Prop. Owners Ass'n*, 214 So. 3d 339, 347 (Ala. Civ. App. 2015)). But the amended complaint alleges a

civil conspiracy to violate "contractual *and legal duties*." Count III specifically alleges that Mr. Deloach breached fiduciary duties, rather than merely contractual duties. (Doc. 29 at ¶ 54). So, the court also rejects this argument for dismissal and WILL DENY ATI's motion to dismiss Count VI of the amended complaint.

### G. Physiotherapy's Leave to Amend

As an alternative to its arguments against dismissal, Physiotherapy requests leave to amend its complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2), to cure any pleadings the court deems defective. (Doc. 38 at 31–32). ATI opposes amendment on the ground of futility, asserting that additional factual allegations cannot salvage the complaint from legal bars to liability. (Doc. 39 at 11).

Under Rule 15, courts "should freely give leave [to amend complaints] when justice so requires." Rule 15 is a liberal amendment policy within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The court agrees with ATI that an amended complaint cannot cure every claim in Physiotherapy's complaint. Specifically, Count I fails because Alabama does not recognize aiding and abetting a breach of duty as a cause of action, and Count V fails because the court declines to re-litigate issues a valid judgment already determined as a matter of law. But Counts II and IV fail, at least in part, because of *pleading* deficiencies, not necessarily legal ones. So, the court WILL DISMISS WITH PREJUDICE Counts I and V without giving Physiotherapy leave to amend its complaint, but the court WILL GRANT Physiotherapy's request for leave to amend its complaint as to claims Counts II and IV.

### IV. Conclusion

For the reasons discussed above, the court WILL GRANT IN PART and WILL DENY IN PART ATI's motion to dismiss. The court WILL DENY ATI's motion to dismiss Counts III and VI of the complaint. But the court WILL DISMISS WITH PREJUDICE Counts I and V of the complaint, and it WILL DISMISS WITHOUT PREJUDICE Counts II and IV of the complaint, with specific leave to amend those claims by September 27, 2019.

**DONE** and **ORDERED** this 16th day of September, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE