FILED
2022 Mar-18  AM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **PHYSIOTHERAPY ASSOCIATES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.** |
| **v.** ) | **2:17-cv-1226-KOB** |
| ) | |
| **ATI HOLDINGS, LLC,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM OPINION

"Keep it secret; keep it safe." The wizard Gandalf's brief command leaves little doubt as to the importance of the ring that he entrusts to the hobbit Frodo.[1] Only determination and serious effort will keep an item of value secret. And over Frodo's hazardous journey, readers observe the bravery that he musters, the challenges he endures, and the feats that he achieves to keep the ring secret and keep it safe.

This lawsuit involves secrets of a corporate nature—client lists, financial data, and business expansion plans. But Alabama trade secrets law, like Gandalf's command, requires the holder of such information to keep it secret. Because

---

[1] J.R.R. Tolkein, *The Fellowship of the Ring: Being the First Part of the Lord of the Rings* (illustrated ed. 2020).

Plaintiff Physiotherapy Associates did not safeguard its secrets, its trade secrets case now comes to its end.

Physiotherapy claims that Defendant ATI Holdings misappropriated Physiotherapy's trade secrets when one of Physiotherapy's former employees, Doug DeLoach, provided insider information to ATI. Physiotherapy's trade secrets claim arises under the Alabama Trade Secrets Act. (Doc. 46 at 24, Count I); *see* Ala. Code § 8–27–1 *et seq.*[2] Physiotherapy also claims that ATI used the information to intentionally interfere with Physiotherapy's business relations with customers (Count II) and with employees (Count III). Finally, Physiotherapy alleges that ATI's actions in concert with DeLoach constitute a civil conspiracy (Count IV).

This matter comes before the court on ATI's motion for summary judgment, (Docs. 84, 85), and motion to exclude the testimony of Ralph Summerford (Docs. 87, 88). Physiotherapy responded (Docs. 96, 97), and ATI replied (Docs. 99, 100). The motions are ripe for review.

As explained below, the court will grant ATI's motion for summary judgment in its entirety because Physiotherapy failed to exercise reasonable efforts to keep secret the alleged trade secrets, and because the Alabama Trade Secrets Act

---

[2] In this diversity action, Alabama law governs the parties' claims. *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992) ("A federal court in a diversity case is required to apply the laws . . . of the state in which the federal court sits.").

preempts all other tort claims relying on the same factual bases as trade secrets claims. To reach this conclusion, the court need not address ATI's motion to exclude Summerford's testimony, so the court will find that motion to be moot.

## FACTUAL BACKGROUND

Unless otherwise indicated, the parties agree to the following facts.

### I.   Physiotherapy and ATI in Alabama's Physical Therapy Market

Both Physiotherapy and ATI provide physical therapy services. Physiotherapy has long maintained a significant physical therapy practice in Alabama, receiving referrals from numerous medical practices throughout the state. One of Physiotherapy's key referring practices was Andrews Sports Medicine and Orthopaedic Center, based in Birmingham, Alabama. Andrews did not make referrals exclusively to Physiotherapy, but Andrews was a "significant" referral source for Physiotherapy's business. (Doc. 86 at 6; doc. 96 at 5). Until late 2016, ATI had no presence in Alabama.

Physiotherapy suffered from internal challenges that led it to declare bankruptcy in 2013. Select Medical Corporation, a nationwide physical therapy provider, purchased Physiotherapy out of bankruptcy in March 2016. Physiotherapy continued to operate under the same name, but the ownership transfer to Select Medical harmed Physiotherapy's relationship with the Andrews

referring group. (Doc. 86 at 7; doc. 96 at 5). As explained below, the parties disagree as to the precise reasons for and scope of the rift between Andrews and Physiotherapy. (*Id.*).

In August 2016, ATI began considering expanding into new physical therapy markets in the South, including Alabama. ATI claims to be the "largest PT provider in the U.S. under one brand." (Doc. 86 at 9). In September 2016, ATI's CEO met with Andrews's CEO to discuss the possibility of ATI opening clinics in Alabama and of Andrews referring patients to ATI.

Around the time of that meeting, Andrews offered ATI key information about the Alabama physical therapy market. This information included potential referral sources from Jacksonville State University and other "high schools and colleges, potential recruiting targets, and potential clinic locations." (Doc. 96 at 8). But the parties dispute the timing and effect of these disclosures in relation to an important memorandum that Doug DeLoach presented to ATI.

By March 2017, ATI had opened its first Alabama clinic in Lincoln, and Andrews was making referrals to ATI.

## II.   DeLoach and the Memo

Doug DeLoach is a licensed occupational therapist who was employed by Physiotherapy for about three years, until October 2016. His last title at Physiotherapy was Regional Director of the North Alabama Market. As ATI

considered expanding into the South in 2016, it reached out to DeLoach and invited him to interview for a position. As part of the interview process, ATI's CEO asked DeLoach to provide a memorandum regarding potential business plans. DeLoach provided this memo on August 25, 2016.

DeLoach's memo contains recommendations for ATI's efforts to expand into the Alabama physical therapy market. (Doc. 85-1). DeLoach captured his recommendations in a list, including names of towns that might be ripe for ATI to expand its business and a brief explanation of why ATI should do so. For example, the memo states:

> Cullman, AL has experienced significant community growth over the last 5 years. Very strong ortho. presence, as well as significant referral presence by the Andrews group. Andrews group has plans to open their own facility by end of 2017 and is presently recruiting physicians for this area. [Physiotherapy] is planning on opening a facility in this area by end of the year, but no lease signed as of yet. Cullman is 25 plus miles from closest [Physiotherapy] location.

(Doc. 85-1 at 2).

The memo also identifies specific doctors and referral sources with whom DeLoach had a working relationship. For example, the memo states that "Dr. Emblom with the Andrews Group has discussed with me on many occasions around [sic] [Physiotherapy] opening up a clinic in this area." (Doc. 85-1 at 3). And the memo identifies several schools and communities that ATI could target as

long term goals. For example, the memo states that "the gem is the [physical therapy] contract with Hoover and Spain Park School system." (Doc. 85-1 at 4).

At times, the memo ranks the volume of certain referral sources to Physiotherapy; it reveals that "Dr. Dugas is our top referring MD in the Group . . . Dr. Cain is 2nd highest referring MD." (Doc. 85-1 at 4). In all, the memo identifies DeLoach's three highest referring doctors, three highest referring school systems, and "probably one of my strongest EBITDA margin clinics." (Doc. 85-1 at 5).

ATI claims that it "commonly ask[ed] management-level recruits" to produce memoranda of this type, "to see if they were a cultural fit and to gauge their interest and analytical ability." (Doc. 86 at 13). But according to Physiotherapy, the memo constitutes a "full-blown business plan, containing large amounts of confidential Physio information." (Doc. 96 at 10).

Physiotherapy also argues that DeLoach provided other internal information to ATI beyond the memo. For example, Physiotherapy presents evidence that DeLoach shared with ATI the total number of referrals from Andrews to Physiotherapy and the fact that some referring physicians were not satisfied with Physiotherapy under Select's ownership. (Doc. 96 at 15).

After DeLoach gave ATI the memo, ATI offered DeLoach a position as regional director over ATI's practices in Alabama, excluding the region of his prior

Physiotherapy market. DeLoach resigned from Physiotherapy, and his first day at ATI was October 31, 2016.

The parties dispute the effect of the information in the memo on ATI's growth in Alabama. ATI presented evidence that it based its expansion into Alabama on conversations with Andrews and a "data-driven intensive process," rather than on the memo. (Doc. 86 at 9). And ATI presents evidence that the memo had nothing to do with Andrews's decision to reduce referrals to Physiotherapy and increase referrals to ATI; rather, Andrews's switch occurred because of Physiotherapy's internal management struggles after the Select takeover and an alienating meeting between the CEOs of Andrews and Physiotherapy. (Doc. 86 at 14). ATI also shows that Physiotherapy experienced declines in referrals long before ATI had a presence in Alabama. (Doc. 86 at 15).

On the other hand, Physiotherapy provides evidence that ATI had little interest in expanding into Alabama until DeLoach presented the memo to ATI. (Doc. 96 at 13). Physiotherapy has shown that the memo precipitated a flurry of activity at ATI, including emails between ATI officers exchanging the memo and incorporating it into a new "blitz" growth plan for Alabama. (*Id.* at 13–14). Physiotherapy also presents evidence that ATI relied on DeLoach to recruit new referring doctors based on his prior market relationships. (*Id.* at 15).

The parties also dispute the secrecy of the sources on which DeLoach's memo relies. ATI presents evidence that DeLoach could learn at least some of the memo's information from external sources, including market research, use of client-reporting software programs, and the Andrews group itself. (Doc. 86 at 13).

But Physiotherapy presents evidence that DeLoach derived the memo's information from Physiotherapy's proprietary documents, including internal "referral reports." (Doc. 96 at 16). Physiotherapy states that it housed all the allegedly secret information in its "password protected computer network." (Doc. 96 at 16; doc. 85-16 at 372–73). And Physiotherapy states that it only shared documents containing the information to a "limited number of executives and managers." (Doc. 96 at 16; doc. 85-16 at 372–73).

Even so, Physiotherapy admits that it never required DeLoach to sign any confidentiality or non-disclosure agreements as part of his employment. (Doc. 96 at 9). And for at least some of the allegedly secret information, Physiotherapy admits that it never offered any specific instruction to DeLoach to keep that information confidential. (Doc. 85-16 at 183).

The parties agree that Physiotherapy lost over a third of its patient referrals from Andrews between 2016 and 2017. (Doc. 96 at 17). And ATI now has physical therapy facilities in many of the locations identified in DeLoach's memo.

### III.   **Procedural Background**

In December 2016, Physiotherapy filed a separate suit against Doug DeLoach related to the conduct underlying this suit, based on a breach of contract theory. United States District Judge Annemarie Axon granted summary judgment in favor of DeLoach and against Physiotherapy in September 2018. *See Physiotherapy Associates, Inc. v. James Doug DeLoach*, No. 1:16-cv-2014-ACA, 2018 WL 4409349 (N.D. Ala. Sept. 17, 2018).

Meanwhile, Physiotherapy filed this separate case against ATI in mid-2017. ATI moved to dismiss Physiotherapy's complaint, which largely contained the same counts as the current complaint.

In ruling on that motion, this court dismissed Physiotherapy's claim that ATI aided and abetted DeLoach's breach of fiduciary duty. (Doc. 44 at 15). The court found that Alabama law does not recognize such a claim.

Next, the court addressed Physiotherapy's trade secrets claim under the Alabama Trade Secrets Act (ATSA). The court found that the memo's information plausibly constituted a trade secret. (Doc. 44 at 18). But the court dismissed the ATSA claim because it found that Physiotherapy had not engaged in reasonable efforts to maintain the secrecy of the information at issue. (Doc. 44 at 22); *see* Ala. Code § 8–27–2(1)(e).

Finally, the court granted in part and denied in part ATI's motion as to Physiotherapy's intentional interference claims. The court dismissed the claim for

interference with *employee* relationships because Physiotherapy did not sufficiently identify the employees that ATI allegedly solicited or its manner of doing so. (Doc. 44 at 29). But the court denied ATI's motion as to the claim for intentional interference with *business* relationships. (*Id.* at 26). The court found that Physiotherapy sufficiently identified a protectible business relationship with Jacksonville State University. And the court found that the failure of Physiotherapy's ATSA claim did not foreclose its interference claim because under Alabama law, a jury can find tortious interference "even though innocent means are employed." (Doc. 44 at 26) (citing *Gross v. Lowder Realty Better Homes & Gardens*, 494 So. 2d 590 (Ala. 1986)).

ATI filed amended claims for violation of the ATSA (Count I), intentional interference with business relations (Count II) and with employee relations (Count III), and civil conspiracy (Count IV). (Doc. 46). That amended complaint contains the current allegations.

## LEGAL STANDARD

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact and in which the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence presented through the prism of the substantive evidentiary burden." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 254 (1986). But the court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *Id*. at 255. And the court must view all evidence and inferences drawn

from the underlying facts in the light most favorable to the non-moving party. *See*

*Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

## DISCUSSION

### I.   Physiotherapy's Trade Secrets Claim

Physiotherapy argues that ATI wrongly procured its trade secrets under the

Alabama Trade Secrets Act (ATSA). Physiotherapy claims the DeLoach memo

contained several categories of trade secrets, including (1) a list of Physiotherapy's

top referring doctors and schools and "particular individuals at Andrews who

'matter' in terms of locking up potentially lucrative relationships with Alabama

schools"; (2) "the financial performance of particular Physio clinics"; (3)

Physiotherapy's "potential business plans," including "growth, acquisition . . . and

financial and budget information"; (4) and other "information about

Physiotherapy's customers." (Doc. 96 at 18, 22). Physiotherapy does not indicate

which portions of the memo constitute these categories.

The ATSA defines a "trade secret" as information that

a. Is used or intended for use in a trade or business;
b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
d. Cannot be readily ascertained or derived from publicly available information;
e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

    f.  Has significant economic value.

Ala. Code § 8–27–2(1). The party asserting a trade secret bears the burden of showing that the information meets each of the ATSA's elements—"a through f." *Ex parte Indus. Warehouse Services, Inc.*, 262 So. 3d 1180, 1186 n.4 (Ala. 2018). So although information like detailed client lists "may, in proper circumstances, be afforded the protection of a trade secret," the ATSA's element (e) requires the claimant to prove that it treated such information as secret. *Public Systems, Inc. v. Towry*, 587 So. 2d 969, 973 (Ala. 1991).

    ATI moves for summary judgment on the trade secrets claim, arguing in part that Physiotherapy failed to use reasonable efforts to maintain the secrecy of that information. (Doc. 86 at 17 *et seq.*). The court agrees; so the court will grant ATI's motion for summary judgment on that ground. In doing so, the court need not address ATI's arguments as to the ATSA's other statutory elements.

### a.  The Significance of DeLoach's Affidavit

    Physiotherapy first claims that "the most telling evidence" of the DeLoach memo's secrecy is an affidavit by Mr. DeLoach. (Doc. 96 at 19). In the affidavit, DeLoach swears

> There is . . . confidential information in the memorandum. Specifically, I identify the areas I think my new employer should target for clinics. . . . If this information was disclosed to Physiotherapy, it could use the information to jump into those areas where it has no current clinic ahead of my new employer and try to lock up the market.

Doc. 98 at 21.

Devoid of context, the court struggles to understand the affidavit's significance here. The affidavit did not originate in this case. Physiotherapy says that DeLoach submitted the affidavit to "this court," and ATI's reply states that DeLoach submitted the affidavit in a discovery dispute in a case to which ATI was not a party. (Doc. 99 at 10). If so, the affidavit likely relates to Physiotherapy's prior case against DeLoach, *Physiotherapy Associates, Inc. v. James Doug DeLoach*, No. 1:16-cv-2014-ACA, 2018 WL 4409349 (N.D. Ala. Sept. 17, 2018).

At any rate, DeLoach's affidavit regarding the DeLoach memo's confidentiality does not resolve the question of whether the memo contains Physiotherapy's trade secrets. The ATSA defines trade secrets under Alabama law—not DeLoach's designation of some of the information as "confidential." The affidavit says nothing about several of the ATSA's elements, including the critical issue here—whether Physiotherapy engaged in reasonable efforts at secrecy. *See* Ala. Code § 8–27–2(1)(e).

Also, DeLoach's affidavit claims that the DeLoach memo contains "confidential information" belonging to his "new employer", i.e., belonging to ATI—not Physiotherapy. (Doc. 98 at 21). But one company's "confidential information" is not necessarily another's trade secret. *See Nimbus Techs., Inc. v. SunnData Prods., Inc.*, No. CV-04-CO-00312 W, 2005 WL 6133373, *17 (N.D.

14

Ala. Dec. 7, 2005) ("The fact that the information, schematics, and drawings may have been a trade secret to SunnData does not mean that Nimbus can claim rights to the very same information as a trade secret of its own."). So the court finds that DeLoach's affidavit does not prove that the DeLoach memo contains Physiotherapy's trade secrets as defined under the ATSA.

### b. *Whether Physiotherapy Reasonably Maintained the Secrecy of its Allegedly Secret Information*

At the motion to dismiss stage, the court ruled that Physiotherapy had not sufficiently alleged that it used reasonable efforts to keep secret the information in the DeLoach memo. (Doc. 44 at 19–22). At that juncture, Physiotherapy alleged that its secrecy efforts included (1) having DeLoach sign a non-solicitation agreement and (2) Physiotherapy's filing suit against DeLoach for disclosure of the memo. The court found these measures ineffective because (1) the non-solicitation agreement made no reference to trade secrets or confidential information and (2) filing suit was not a precautionary measure that prevented DeLoach from disclosing the information. (*Id.*).

Now, Physiotherapy argues that two different efforts maintained the secrecy of the information at issue. First, Physiotherapy housed the allegedly secret information on its "password-protected computer network"; and second, Physiotherapy made the information available only to "a few executives and managers." (Doc. 96 at 22). No testimony or evidence expands on these efforts.

Physiotherapy's only support for them is similar statements in its interrogatory responses. *See* (doc. 85-16 at 372). ATI argues that these measures do not show a reasonable effort at secrecy as required by the ATSA.

In *Allied Supply Co., Inc. v. Brown*, the Alabama Supreme Court identified actions that failed to show reasonable efforts at secrecy under the ATSA. 585 So. 2d 33 (Ala. 1991). There, the Court found *no* reasonable secrecy as to the company's client lists when

> At least 10 Allied employees had free access to the lists. . . . the lists were not marked "confidential"; the lists were taken home by employees; multiple copies of each list existed; and the information on the lists was contained in the receptionist's Rolodex file.

*Id.* at 36.

Likewise, a federal court in this state found no reasonable secrecy when (1) employees who needed to know secret information had free access to it; (2) the company did not lock filing cabinets containing the information; (3) the company did not mark the information as "confidential"; and (4) the company did not require its employees to execute confidentiality agreements. *Alagold Corp. v. Freeman*, 20 F. Supp. 2d 1305, 1315 (M.D. Ala. 1998).

On the other hand, courts have identified two efforts at secrecy that typically meet the mark under the ATSA. The first is the company's requirement that employees sign a confidentiality agreement. In one case, the Alabama Supreme Court found reasonable secrecy based solely on confidentiality and non-solicitation

agreements explicitly prohibiting employees' use of trade secrets. *See Ex parte W.L. Halsey Grocery Co.*, 897 So. 2d 1028, 1034 (Ala. 2004); *see also Alagold Corp.*, 20 F. Supp. 2d at 1315 (finding no secrecy, in part because of lack of confidentiality or non-compete agreement); *DocRX, Inc. v. Dox Consulting, LLC*, No. CA 10-0364-C, 2012 WL 13049365, *20 (S.D. Ala. Oct. 31, 2012) (same). The second act is the company's practice of marking the allegedly trade secret information as "confidential". *See Allied Supply Co., Inc. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991); *Unisource Worldwide, Inc. v. S. Cen. Ala. Supply, LLC*, 199 F. Supp. 2d 1194, 1209 (M.D. Ala. 2001).

As an initial matter, the court cannot discern much about Physiotherapy's secrecy efforts from its briefing on this point, which constitutes a single unhelpful sentence. (Doc. 96 at 22).[3] The court believes that its attempt to construe Physiotherapy's secrecy efforts in the following analysis is generous, given Physiotherapy's brevity. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). And the court notes that "the burden is on the party

---

[3] That sentence reads: "There is substantial record evidence that Physio took reasonable (indeed, extensive) efforts to maintain the secrecy of the information contained in the Memo, including by maintaining it on a secured, password-protected network and limiting the information to a few executives and managers."

asserting trade secret protection to show that reasonable steps were taken to protect secrecy." *Allied Supply Co.*, 585 So. 2d at 36.

Physiotherapy first relies on its password-protection efforts. But this court's research indicates that the use of password-protected servers shows reasonable secrecy *only* when paired with other substantial efforts. For example, in *Unisource Worldwide*, the court found that the plaintiff company exercised reasonable secrecy when the company "required passwords on computers *and marked information as confidential*." 199 F. Supp. 2d at 1210 (emphasis added). And another court found reasonable secrecy when the company password-protected its computer systems, required employees to sign ethics policies about trade secret information, and entered into confidentiality agreements with any competitors who saw the information. *Movie Gallery US, LLC v. Greenshields*, 648 F. Supp. 2d 1252, 1264 (M.D. Ala. 2009). Physiotherapy presents no evidence that it employed such additional protections here.

Persuasive authority also indicates that the use of password protection shows only a minimal effort at secrecy. As one court pointed out, "[i]f a basic computer-login password were enough, then every document stored on a company device would potentially be protectible." *Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 397 (D. Minn. 2020). And another court found that restricting access by requiring computer passwords is merely a "normal business practice[] in any

business." *Maxpower Corp. v. Abraham*, 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008).

This court finds that Physiotherapy's password-protection system reflects little more than a "normal business practice." *See Maxpower Corp.*, 557 F. Supp. 2d at 961. Physiotherapy's interrogatory response explains that its system required "each employee" to enter a username and password to access its "computer system and network." (Doc. 85-16 at 373). In other words, Physiotherapy employed only a "basic computer-login password" that permitted access to Physiotherapy's entire network of files. *See Prairie Field Servs.*, 497 F. Supp. 3d at 397. But if all that protected Physiotherapy's allegedly secret information was a system-wide password, then every employee of Physiotherapy with a login could access the information. Physiotherapy's system-wide password provides no more protection than placing proprietary files in a cabinet that is open to all employees. *See Alagold Corp.*, 20 F. Supp. 2d at 1315 (finding no reasonable secrecy).

Likewise, Physiotherapy offered no evidence that it marked any information as "confidential." *See Unisource Worldwide, Inc.*, 199 F. Supp. 2d at 1210. And because of the mobility of digital documents, giving trade secrets to employees in a digital format does nothing to limit dissemination or taking the documents home—another indicator of insufficient secrecy. *See Allied Supply Co.*, 585 So. 2d at 36.

With good reason, courts in this state have never found reasonable secrecy based solely on an employer's password-protection; this court will not be the first. *See Unisource Worldwide Inc.*, 199 F. Supp. 2d at 1210; *Movie Gallery US, LLC*, 648 F. Supp. 2d at 1264.

And Physiotherapy's only other secrecy effort—sharing the information with limited personnel—is also insufficient. Physiotherapy's interrogatory answer explains that, depending on the information at issue, those with access included Physiotherapy's president, "area" vice presidents, "regional" vice presidents, regional directors of sale, other "executives," direct and indirect managers, supervisors, and those involved with the individual customers identified. (Doc. 85-16 at 372). Physiotherapy does not number these individuals, but the Alabama Supreme Court has found troubling a company's sharing its secrets with *ten* employees. *See Allied Supply Co.*, 585 So. 2d at 36; *see also Alagold Corp.*, 20 F. Supp. 2d at 1315 (finding that limiting information to "need to know" officers did not preserve secrecy when company failed to lock file cabinets, mark information as "confidential," and have employees sign confidentiality agreements). Likewise, this court finds troubling the lengthy categories of those who could access Physiotherapy's supposedly secret information.

Perhaps most glaring are the secrecy efforts that Physiotherapy did *not* undertake. Physiotherapy admits that its employment agreement with DeLoach

"did not contain a confidentiality or non-disclosure provision." (Doc. 96 at 9). But Physiotherapy's interrogatory answer states that its employment contracts with some of its *other* employees contained confidentiality provisions. (Doc. 85-16 at 373). So Physiotherapy's failure to impose such provisions on DeLoach—a regional director with access to allegedly secret information—is even more glaring.

As stated above, confidentiality agreements exist in nearly every case where Alabama courts have found reasonable secrecy efforts, and the *lack* of such agreements is a common thread in cases finding the opposite. *See, e.g.*, *Ex parte W.L. Halsey Grocery Co.*, 897 So. 2d at 1034, *Allied Supply Co.*, 585 So. 2d at 36; *Alagold Corp.*, 20 F. Supp. 2d at 1315; *DocRX, Inc.*, 2012 WL 13049365 at *20; *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.") (applying the common law of trade secrets). The court finds that Physiotherapy's lack of confidentiality requirements, combined with the long list of those who had access to its information, shows an insufficient effort at secrecy.

Physiotherapy's proof also failed in other key respects. Although "simply labeling information 'confidential' does not make it a trade secret," it is an effort that courts look favorably upon. *See Unisource Worldwide, Inc.*, 199 F. Supp. 2d at

1210; *Allied Supply Co.*, 585 So. 2d at 36. But Physiotherapy provides no evidence that it labeled any of its information as confidential. And Physiotherapy admitted that it did not instruct DeLoach to keep portions of the information at issue secret. (Doc. 85-16 at 183–84). In fact, Physiotherapy presents no evidence that it told any of its employees about the secrecy of its information—a key factor in the case law. *See Alagold Corp.*, 20 F. Supp. 2d at 1315; *DocRX Inc.*, 2012 WL 13049365 at *20. These failures support the court's finding of insufficient efforts to guard secrecy.

The court also finds little merit to Physiotherapy's alleged "Code of Conduct." In the *facts* section of its brief, Physiotherapy mentions for the first time an "operative Select Code of Conduct." (Doc. 96 at 9). But ATI argues that Physiotherapy never produced the Code during discovery. (Doc. 99 at 9 n.2). If so, Physiotherapy cannot rely on it at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(2). Further, Physiotherapy's *argument* never explains the Code's significance. As stated before, the court bears no responsibility to construct Physiotherapy's argument about the Code's relevance to this case, including whether its provisions apply to the information at issue, whether it was in effect when DeLoach disclosed information to ATI, or whether DeLoach knew of or agreed to abide by the Code. *See Resolution Trust Corp.*, 43 F.3d at 599.

In sum, the court finds that Physiotherapy fails to meet its burden to prove that it engaged in "efforts that are reasonable under the circumstances to maintain [the] secrecy" of the information at issue. *See* Ala. Code § 8–27–2(1)(e). So the court will grant summary judgment in favor of ATI as to Physiotherapy's ATSA claim because Physiotherapy failed to establish that the information qualifies as a trade secret.

## II.   <u>Physiotherapy's Intentional Interference Claims</u>

ATI requests summary judgment as to Physiotherapy's claims that ATI intentionally interfered with Physiotherapy's business relations with its customers (Count II) and with its employees (Count III).

### a.  *Physiotherapy's Failure to Defend the Employee Relations Claim*

Physiotherapy's brief defends only its claim for "intentional interference with its *customers*." (Doc. 96 at 27) (emphasis added). Physiotherapy abandoned its claim for interference with *employee relations* (Count III) because it did not respond to ATI's challenges to that claim. *See Resolution Trust Corp.*, 43 F.3d at 599 ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. . . . The onus is upon the parties to formulate arguments."). So the court will grant ATI's motion for summary judgment as to that claim. The court now turns to Physiotherapy's claim for intentional interference with business relations.

23

### b. Whether the ATSA Preempts Physiotherapy's Intentional Interference with Business Relations Claim

ATI argues that the Alabama Trade Secrets Act preempts Physiotherapy's claim for intentional interference with business relations. (Doc. 86 at 26). The court agrees.

The ATSA provides, "Those provisions of this chapter that are inconsistent with the common law of trade secrets supersede the common law." Ala. Code § 8–27–6. Interpreting this provision, the Alabama Supreme Court stated, "the legislature intended for the Act to replace common law tort remedies for the misappropriation of trade secrets, while leaving existing contract remedies or safeguards in place." *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991).

In *Allied Supply*, the plaintiff stated both an ATSA claim and a common law claim for breach of fiduciary duty by "misappropriation of trade secrets." At the summary judgment stage, the trial court granted summary judgment against the plaintiff's ATSA claim because the information was not a trade secret, but the court denied summary judgment as to the common law breach of fiduciary duty by misappropriation claim. *Id.* at 36. The Supreme Court affirmed the finding that the information was not a trade secret. *Id.* But the Court found that the trial court erred by permitting the plaintiff to continue to pursue the breach of fiduciary duty by misappropriation claim because the ATSA preempted that claim. *Id.* at 37.

24

Unlike the *Allied Supply* plaintiff's "breach of fiduciary duty by misappropriation of trade secrets" claim, Physiotherapy's intentional interference claim does not so obviously overlap with the ATSA by seeking "remedies for the misappropriation of trade secrets." *See Allied Supply*, 585 So. 2d at 37. So the court must decide whether Physiotherapy's intentional interference with customer relations claim falls within the scope of ATSA preemption.

Alabama's Supreme Court has not spoken to the scope of ATSA preemption since *Allied Supply*, but federal courts in Alabama now generally agree that preemption applies when "the factual basis for [a] claim is essentially the same as the one for the ATSA claim." *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1276 (M.D. Ala. 2010). Put differently, "To the extent plaintiffs plead common law causes of action *based on the same underlying facts* as those giving rise to their claim under the ATSA, such causes of action are preempted." *Madison Oslin, Inc. v. Interstate Res., Inc.*, No. 2:11-cv-01343-SLB, 2012 WL 4730877, *9 (N.D. Ala. Sep. 30, 2012) (emphasis added).

Other courts have employed the "same underlying facts" test to find ATSA preemption over tort claims further afield of *Allied Supply*'s "misappropriation" claim. For example, courts have found that the ATSA preempts common law claims for "conversion" of alleged trade secrets, for "breach of fiduciary duty" by use of alleged trade secrets, and for fraudulent "misrepresentation" for the purpose

of taking alleged trade secrets. *See Arkema Inc. v. Emerson Process Mgmt., LLP*, 413 F. Supp. 3d 1191, 1196 (S.D. Ala. 2019); *Madison Oslin, Inc.*, 2012 WL 4730877, at *9.

Most relevant here, one court recently found that the ATSA preempted a plaintiff's claim for intentional interference with contractual relationships because that claim rested "on the same underlying facts" as the plaintiff's ATSA claim. *Gulf South Comms., Inc. v. Woof Inc.*, No. 1:21-cv-40-ECM, 2021 WL 2405199, *6 (M.D. Ala. June 11, 2021). The court first noted that the common law claim at issue in *Allied Supply* was for "*breach of fiduciary duty* by misappropriating trade secrets," rather than a claim for the tort of misappropriation. *Id.* at *5 (citing *Allied Supply Co.*, 585 So. 2d at 37) (emphasis added). In other words *Allied Supply*'s reasoning applied to claims not "specifically brought as a 'misappropriation of a trade secret' claim," such as the intentional interference with contractual relations claim at issue in *Gulf South*. *Id.*

The court in *Gulf South* then surveyed the more recent federal cases cited above and agreed that ATSA preemption turns not on the styling of the related tort claim, but on whether the tort claim is "based on the same underlying facts as those giving rise to their claim under the ATSA." *Id.* at *6 (citing *Madison Oslin, Inc.*). The court reasoned that, although the intentional interference claim at issue "may require additional elements of proof, those claims are not removed from the scope

26

of ATSA preemption." *Id.* at *6. Finding that the intentional interference claim and ATSA claim rested on the same underlying facts, the court found that preemption applied to the interference claim. *Id.*

Physiotherapy counters this authority with nonbinding case law interpreting the Uniform Trade Secrets Act (UTSA), which Alabama's ATSA largely mirrors. Some courts interpreting the UTSA have found a narrower scope of preemption than the Alabama cases described above. *E.g.*, *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 158 n.4 (5th Cir. 2018) (finding no preemption of common law claim for conversion of trade secrets). But other courts follow the Alabama approach in preempting all tort claims arising from the same facts as a UTSA claim. *See New S. Equip. Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 534 (S.D. Miss. 2013) (collecting cases).

At any rate, this court will employ the test that federal courts applying Alabama law have developed based on the reasoning of *Allied Supply*: the ATSA preempts any common law tort claim with underlying factual bases "essentially the same" as the plaintiff's ATSA claim. *See Bell Aerospace Servs., Inc.*, 690 F. Supp. 2d at 1276.

Here, Physiotherapy argues that the factual basis for its intentional interference claim "stems from *more than* ATI's misappropriation of trade secrets." (Doc. 96 at 27) (emphasis added). To explain this statement,

27

Physiotherapy first recites its complaint, which alleges that ATI intentionally

interfered by

> aiding and abetting and conspiring with DeLoach to breach his
> fiduciary duties and utilizing the information gained through
> DeLoach's breach and in violation of the Alabama Trade Secrets Act,
> to have Defendants' employees solicit Physiotherapy's customers.

(Doc. 46 at 27). The only factual support that Physiotherapy provides for these

claims is that ATI "requested the[] Memo while DeLoach was employed with

Physio, forwarded it within the company, and followed it to expand its operations

to Alabama—all while knowing that the Memo's author was an employee of the

competitor it set to displace." (Doc. 96 at 26–27).

The court finds that this factual support does not differ from the factual

bases supporting Physiotherapy's ATSA claim. For example, to prove the

information's "economic value" under the ATSA, Physiotherapy provides proof

that ATI followed the DeLoach memo's plans to expand its Alabama operations; it

offers the same proof for its interference claim here. (Doc. 96 at 24). And for its

ATSA claim, Physiotherapy shows that ATI asked for the memo and forwarded the

memo internally, while knowing that DeLoach was employed at Physiotherapy;

again, Physiotherapy offers the same proof for this claim. (Doc. 96 at 21, 24). The

factual bases for the ATSA and interference claims are not "essentially" the same;

they are identical. *See Bell Aerospace Servs., Inc.*, 690 F. Supp. 2d at 1276. So the

court finds that the ATSA preempts Physiotherapy's intentional interference claim.

And Physiotherapy's citation to its complaint provides no additional evidentiary bases for the interference claim. For example, Physiotherapy provides no evidence of any "fiduciary duty" that DeLoach breached *besides* his taking Physiotherapy's allegedly secret information. (Doc. 46 at 27). Nor does Physiotherapy explain how ATI "aided and abetted" DeLoach in breaching that alleged duty *besides* ATI's role in asking for the allegedly secret information. Physiotherapy relied on the same factual support to prove that ATI "used" its trade secret information—a required element under the ATSA. (Doc. 96 at 24–25). And in fact, the complaint quite plainly indicates the factual overlap with the ATSA when it states that ATI intentionally interfered by "utilizing the information gained through DeLoach's breach and *in violation of the Alabama Trade Secrets Act*." (Doc. 46 at 27) (emphasis added). Physiotherapy provides no other evidence of ATI's "utilizing" the information that would distinguish its ATSA claim from its intentional interference claim. So the court finds that these allegations rest on the "same underlying facts" as the ATSA claim. *See Madison Oslin, Inc.*, 2012 WL 4730877, at *9.

Physiotherapy attempts to distinguish its interference claim from its ATSA claim by calling ATI's acts "aiding and abetting" and "distinct wrongful conduct." (Doc. 96 at 31). But courts have rightly rejected such conclusory labels when they lack facts distinguishing the common law and ATSA claims. *See Rotor Blade, LLC*

*v. Signature Utility Servs., LLC*, -- F. Supp. 3d --, 2021 WL 2581280, *17 (N.D. Ala. 2021) ("To the extent that Rotor Blade's theory of liability is that [Defendant] breached a duty by misappropriating trade secrets, the court agrees with the defendants that the ATSA preempts the claim.").

Of course, the ATSA does not automatically preempt all intentional interference claims. As Physiotherapy correctly states, the conduct giving rise to an intentional interference claim need only be "improper," rather than tortious under the ATSA. (Doc. 96 at 31); *see White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 13 (Ala. 2009). But these claims' differing *legal standards* has no bearing on whether Physiotherapy has offered differing *factual bases* that would protect its interference claim from ATSA preemption. Certainly, a party could state a legally sufficient interference claim even if it cannot prove a full-blown trade secret violation; this court held as much at the motion to dismiss stage. (Doc. 44 at 26). But to avoid ATSA preemption, the interference claim must rest on factual bases supported by evidence that is not "essentially the same" as the ATSA claim. *See Bell Aerospace Servs., Inc.*, 690 F. Supp. 2d at 1276. So the court's holding hinges on the facts supporting Physiotherapy's interference claim; here, those facts are identical to the facts supporting the ATSA claim.

In other words, if Physiotherapy had offered *any* facts to distinguish its interference and ATSA claims, the court's preemption conclusion may have

differed. *See, e.g.*, *Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 307 (D.N.H. 2012) (finding that UTSA did not preempt intentional interference claim that rested on defendant's use of alleged trade secret *and* "fraudulent misrepresentations or defamatory statements" to plaintiff's customers); *Ferrari v. D.R. Horton, Inc.-Birmingham*, No. 2:14-cv-01941-LSC, 2017 WL 467472, (N.D. Ala. Feb. 3, 2017) (finding that ATSA did not preempt fiduciary duty claim that rested on use of alleged trade secrets *and* defendant's lying to plaintiff, refusing to cooperate in plaintiff's internal investigation, and other acts of disloyalty). But the identical factual bases for Physiotherapy's interference and ATSA claims indicate that the interference claim seeks nothing more than a "remed[y] for the misappropriation of trade secrets." *See Allied Supply Co.*, 585 So. 2d at 37. So, under the facts of this case, the court finds the ATSA preempts Physiotherapy's intentional interference claim.

### c. *Whether the Court's Finding of No ATSA Liability Impacts the Issue of Preemption*

Physiotherapy argues that "preemption does not apply when the information does not rise to the level of a trade secret." (Doc. 96 at 32). The court disagrees.

As support, Physiotherapy cites *NuTech Medical, Inc. v. Liventa Bioscience, Inc.*, in which the defendant moved to dismiss the plaintiff's conversion claim based on converting allegedly trade secret documents. No. 2:15-cv-1121-HGD, 2016 WL 11623331, *3 (N.D. Ala. July 14, 2016). The court found that it could

not determine at the motion to dismiss stage whether the documents at issue were trade secrets. But the court concluded that, if discovery revealed that the documents were not trade secrets, then the plaintiff could state a conversion claim for those documents because "any misappropriation of those documents could not be remedied under [the plaintiff]'s ATSA claim." *Id.* at *4.

But *NuTech* appears to conflict with *Allied Supply*. As previously discussed, the Alabama Supreme Court in *Allied Supply* affirmed the trial court's finding that the documents were *not* trade secrets because of the plaintiff's failure to maintain reasonable secrecy, but it found the ATSA preempted the plaintiff's claims regarding *the same, non-trade secret information. Allied Supply Co.*, 585 So. 2d at 37. The Court held that ATSA preemption applied to the tort claim regarding the non-trade secret "confidential documents." *See id.* ("We do not agree with the trial court's ruling that Allied could pursue both statutory and common law theories of recovery for the defendants' alleged misappropriation of 'trade secrets' *or confidential documents*.") (emphasis added).

Following the reasoning of *Allied Supply*, at least three federal courts in Alabama have found that "preemption under the ATSA is not dependent on whether the misappropriated information constitutes a trade secret." *Rotor Blade, LLC*, --- F. Supp. 3d ---, 2021 WL 2581280, at *14 (quoting *Parker v. Petrovics*, No. 2:19-cv-699-RDP, 2020 WL 3972761, *11 (N.D. Ala. July 14, 2020)); *see*

*also Gulf S. Comms., Inc.*, 2021 WL 2405199, at *7. As one judge recently put it,

"allowing a claim to proceed when the ATSA claim failed would defeat the

purpose of the ATSA to supersede common law inconsistent with the statute." *Gulf

S. Comms., Inc.*, 2021 WL 2405199, at *7 (citation omitted). Like in this case, that

court applied ATSA preemption to the plaintiff's claim for intentional interference

with contractual relations.

The court finds *NuTech* to have little persuasive value because that court

failed to address the fact that *Allied Supply*'s holding applied to non-trade secret

information.[4] The reasoning of *NuTech* also failed to discuss federal cases

interpreting *Allied Supply* and finding ATSA preemption when "the factual basis

for [a] claim is essentially the same as the one for the ATSA claim." *See Bell

Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1276 (M.D.

Ala. 2010). But this court agrees with that later authority finding that preemption

determinations do not hinge on trade secret status. *See, e.g.*, *Rotor Blade, LLC*, ---

F. Supp. 3d ---, 2021 WL 2581280, at *14.

In short, the focus for ATSA preemption is whether the other tort claims rely

"on the same underlying facts" as the ATSA claim—not whether the plaintiff's

ATSA claim succeeds or fails. *See Gulf S. Comms., Inc.*, 2021 WL 2405199, at *6.

---

[4] Physiotherapy also cites Judge Kallon's reasoning in *Acoustic Artistry, LLC v. Peavey Elec. Corp.*, No. 2:10-cv-2194-AKK, 2013 WL 12250381, *8 (N.D. Ala. Jan. 10, 2013). But Judge Kallon has recently taken the opposite view of ATSA preemption, so that case provides little value. *See Killough*, 2021 WL 1192990, at 8 n.13 (Kallon, J.).

As discussed above, the facts supporting Physiotherapy's interference claim—
ATI's requesting the DeLoach memo while knowing that he worked for
Physiotherapy, and using the memo in its business plans—are identical to the facts
Physiotherapy alleges to support its ATSA claim. Although Physiotherapy fails to
prove an ATSA violation, that failure does not save its interference claim from
ATSA preemption.

Physiotherapy also relies on case law from outside Alabama indicating that
the UTSA does not preempt tort claims regarding non-trade secret information. *See
Brand Services L.L.C.*, 909 F.3d at 158. But that case rested on state court
jurisprudence differing from Alabama's. *See id.* at 159 (finding no preemption
because "the Louisiana appellate courts have twice held that LUTSA does not
preempt where non-trade secret information was at issue"). As stated before, *Allied
Supply*'s reasoning applied to non-trade secret information. *Allied Supply Co.*, 585
So. 2d at 37. So this court chooses to rely on authority applying Alabama law.

In sum, *Allied Supply* states that the ATSA preempts all claims under which
the plaintiff seeks "common law tort remedies for the misappropriation of trade
secrets," and its reasoning makes clear that that rule applies even to non-trade
secret information. *See Allied Supply Co.*, 585 So. 2d at 37. Here, Physiotherapy's
claim for intentional interference with business relations rests on the same facts as
its ATSA claim. So the court will GRANT ATI's motion for summary judgment as

to Physiotherapy's claim for intentional interference with business relations because the ATSA preempts that claim.

### III.   Physiotherapy's Civil Conspiracy Claim

Physiotherapy concedes that "a civil-conspiracy claim cannot exist in the absence of the underlying tort claims." (Doc. 96 at 30) (quoting *Heining v. Abernathy*, 295 So. 3d 1032, 1040 (Ala. 2019)). Because the court will grant summary judgment in favor of ATI as to all other claims in the case, the court will GRANT summary judgment in favor of ATI as to the civil conspiracy claim as well.

### IV.   ATI's Motion to Exclude

ATI moves to exclude the testimony of Ralph Summerford, upon which Physiotherapy relies as proof of the damages that it sustained from ATI and DeLoach's conduct. Because the court will grant summary judgment in favor of ATI as to all of Physiotherapy's claims, the court will find this motion to be MOOT.

### CONCLUSION

For the reasons stated above, the court will grant ATI's motion and will enter summary judgment in favor of ATI and against Physiotherapy. The court will grant the motion as to Physiotherapy's ATSA claim because it finds that

35

Physiotherapy failed to engage in reasonable efforts at secrecy concerning the information at issue. The court will grant the motion as to Physiotherapy's intentional interference with employee relations claim because Physiotherapy failed to defend that claim. The court will grant the motion as to Physiotherapy's intentional interference with business relations claim because the ATSA preempts that claim under the facts alleged here. And the court will grant Physiotherapy's motion as to the civil conspiracy claim because no tortious conduct underlies it.

Finally, the court finds ATI's motion to exclude the testimony of Ralph Summerford to be moot because his testimony concerning damages was irrelevant to the court's summary judgment analysis.

**DONE** and **ORDERED** this 18th day of March, 2022.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE